I!BROWN, C.J.
Defendant, Marvin Earl Garrett, was indicted on three counts of distribution of cocaine. A jury convicted him of two counts and the court imposed concurrent 30-year hard labor terms. Defendant has appealed urging that he was denied a fair trial due to prosecutorial misconduct. Finding no merit to defendant’s claim, we affirm his convictions and sentences.

Facts

Imri Dale Matthews, a 70-year-old recently widowed and retired farmer, lived in rural DeSoto Parish. After his wife’s death he got involved with cocaine. In April 2002, Matthews agreed to cooperate with Pat Cobb, a deputy working narcotics for the DeSoto Parish Sheriffs Office. Thereafter, Matthews made three controlled purchases of crack cocaine from defendant. Deputy Cobb paid Matthews for making the buys. The record is unclear whether the deal included immunity from prosecution for Matthews.
Matthews had known defendant for about ten years, mainly through defendant’s father’s barbecue business. At trial, Matthews first denied that he had bought drugs from defendant on other occasions; however, after further questioning by the state, Matthews admitted that he lied and had regularly purchased drugs from defendant.
Telephone conversations between Matthews and defendant setting up the buys were recorded. Matthews made three trips to defendant’s home: April 18, 2002; April 26, 2002; and May 3, 2002. On each occasion, Matthews first met with the deputies from the DeSoto Parish Sheriffs 12Office who put a small video camera in Matthews’ pickup truck. The vehicle was also wired for sound. Each time, deputies searched Matthews and his truck for drugs or money. Before each buy, Matthews was given $100. He then drove approximately four miles to defendant’s house. Matthews was followed by deputy sheriffs in unmarked vehicles, although not to within eyesight of defendant’s home.
With each drug buy, Matthews would pull into the driveway of defendant’s home and defendant would come to Matthews’ truck. In each transaction, Matthews would purchase four or five rocks of crack cocaine for $100. After each drug buy, Matthews would drive a short distance to a graveyard, where the deputies were waiting for him. He then turned over the cocaine to the officers. Each time the camera showed an exchange take place but only on the last transaction (May 3, 2002) did the tape show defendant’s face.
The case was eventually set for trial on February 24, 2003. In early February 2003, Matthews went to the office of Assistant District Attorney Richard Johnson. What was actually said at this meeting is disputed in part. Johnson testified that Matthews told him that he did not want to testify against defendant because “they” had threatened to burn his house down and blow his head off. Matthews admitted to going to see ADA Johnson; however, he denied telling Johnson that he had been threatened by defendant or anyone else. On further questioning, Matthews stated that he had heard rumors that someone was threatening him. Matthews admitted that he told the ADA that he did not want to testify. Matthews further |3admitted that defendant had come to visit him at his home at least once prior to trial and had called at least twice to find out whether Matthews was going to testify. Matthews stated that he told defendant that he wasn’t planning to testify.
*1209 After meeting with Matthews, Johnson sought and obtained a “Motion and Order For Arrest of Material Witness Pursuant to R.S. 15:257.” The motion, filed on February 13, 2002, asked that Matthews be held under a material witness bond. The trial court, however, wrote that Matthews be held until “further orders of the court.” Matthews was placed into jail as a material witness until his testimony at trial eleven days later. While in jail, Matthews was interviewed several times by both the district attorney’s office and defendant’s attorney.
Prior to trial, defendant did not file any other motions or objections relating to Matthews being held in jail without bond as a material witness. Likewise, during trial, defendant did not object to the admissibility of Matthews’ testimony. The jury found defendant not guilty as to count one, but guilty on counts two and three.

Discussion

In his appeal, defendant has not asserted any trial errors, challenged the sufficiency of the evidence or raised the issue of excessiveness of his sentences. Instead, defendant’s three assignments of error all relate to the fact that prior to trial, the state sought and obtained an order to arrest the key witness in the case, Imri Matthews, and held him in jail for 11 days until defendant’s trial. According to defendant, this was prosecutorial J^misconduct such that he was deprived of a fair trial and due process. Defendant further argues that it was error for the trial court not to allow Matthews to post bond.
This court, in State v. McCarty, 463 So.2d 788, 790-91 (La.App. 2d Cir.1985), writ denied, 466 So.2d 1301 (La.1985), quoted the following language from Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935):
The [prosecuting attorney] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor — indeed he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
In this case, defendant has argued that the state falsely detained Imri Matthews for the purpose of affecting defendant’s constitutional rights to due process and a fair trial. In State v. McCarty, supra, this court found that the prosecutor’s actions in having the jailer place a key witness in the same cell as defendant so that the two would “impeach themselves” was prosecu-torial misconduct.
Unlike the circumstances presented in State v. McCarty, supra, in the instant case, we find that the ADA’s actions in obtaining a material witness warrant for Imri Matthews was in accordance with law and was appropriately motivated.
|RLa. R.S 15:257 provides:
Whenever it shall appear, upon motion of the district attorney or upon motion of a defendant supported by his affidavit, that the testimony of any witness is essential to the prosecution or the defense, as the case may be, and that there are good grounds to fear that said witness may depart or be taken from the jurisdiction of the court, a judge, as *1210 defined in Article 931 of the Code of Criminal Procedure, shall issue a warrant for the arrest of the witness. The witness shall be arrested and held in the parish jail, or such other suitable place as shall be designated by the court, until he gives an appearance bond as provided for defendants when admitted to bail, or until his testimony shall have been given in the cause or dispensed with.
The motion prepared by ADA Johnson alleged that Imri Matthews had told him that he was refusing to testify truthfully against defendant and that “they” had threatened to burn down his house and blow his head off. The motion further asserted that it was a possibility that Matthews would depart the jurisdiction prior to defendant’s trial. The state alleged its fears that the threats would cause Matthews not to appear at trial. At the trial, ADA Johnson testified as to the truthfulness of these statements.
Matthews admitted at trial that he told ADA Johnson that he would not testify against defendant. Matthews further stated that he had heard rumors that “someone” would burn his house down or kill him if he testified. Matthews also testified that prior to trial he had several contacts with defendant in which he related to defendant that he would not testify against him. The only issue that ADA Johnson and Matthews differed on was whether Matthews had told Johnson about the rumors that someone would burn down his house or kill him if he testified. According to Matthews, he did not discuss these threats with Johnson.
| fiWhen a witness is detained as a result of allegations in an affidavit submitted to the trial court pursuant to La. R.S. 15:257 and the witness subsequently admits the facts alleged, the detention is not unlawful. Cooks v. Rodenbeck, 97-1389 (La.App. 3d Cir.04/29/98), 711 So.2d 444. There was no prosecutorial misconduct in the instant case.
We further note that regardless of the ADA’s motivation or, even if the warrant was wrongly obtained, it resulted in no harm. Defendant’s counsel used the detention of Matthews as an opportunity to interview the witness in preparation for trial. The trial transcript reflects that defense counsel conducted a strong cross-examination of Matthews, establishing repeatedly that the witness had lied under oath. In fact, after this cross-examination, the state was forced to have Matthews declared a hostile witness and to put on rebuttal evidence that Matthews had lied in defendant’s favor.
There is nothing in the transcript to support defendant’s claim that his ability to defend himself was adversely affected by Matthews’ detention before trial. But for a situation in which Matthews did not testify at all, his pretrial lockup was the “next best thing” and inured to defendant’s advantage. The transcript shows that Matthews was hostile to the state, not defendant.

Conclusion

For the above stated reasons, defendant’s convictions and sentences are AFFIRMED.