SUSAN M. CHEHARDY, Judge.
hOn appeal, defendant challenges his conviction and sentence for third-offense domestic abuse battery. For the following reasons, we affirm his conviction and sentence.

*630
Procedural history

On April 26, 2011, the St. Charles Parish District Attorney filed a bill of information charging defendant, William Gatewood, with third-offense domestic abuse battery, in violation of La. R.S. 14:35.3. On August 23, 2011, trial commenced, after which the six-person jury unanimously found defendant guilty as charged.
On November 17, 2011, after his motion for new trial was denied, defendant waived sentencing delays. Immediately thereafter, the trial judge sentenced defendant to five years in the Department of Corrections and imposed a $2,000.00 fine, which was suspended as long as defendant, his family, and his agents or assigns avoid contact with the victim or any member of her family. Defendant moved for an appeal, which was granted. laFacts
On June 19, 2010, at approximately 11:00 p.m., Tanya Gilliland and her boyfriend, defendant herein, left a party in her vehicle to pick up Ms. Gilliland’s daughter. As Ms. Gilliland drove, defendant rode in the passenger seat and began a discussion about Ms. Gilliland’s mother. When Ms. Gilliland exited Interstate 310 near the Hahnville Bridge, defendant shifted the car into “Neutral” and removed the keys from the vehicle’s ignition. Ms. Gilliland struggled to control the vehicle. At that point, the argument escalated, and when Ms. Gilliland turned to look at defendant, he struck her in the mouth with his hand.
At her first opportunity, Ms. Gilliland pulled her vehicle to the side of the road and stopped. When she exited the vehicle, defendant threw her entire set of keys into a nearby field. The couple argued on the side of the road for a few minutes. Ms. Gilliland then found a spare key in her purse, returned to her vehicle, and drove to a nearby bar called McGuire’s Pub.
When Ms. Gilliland entered McGuire’s, the bartender noticed that Ms. Gilliland was crying hysterically and very upset and stopped her to inquire about her situation. The bartender, Amanda Hughes, called the police.
Deputy Christopher Baird arrived at the bar at approximately 11:22 p.m. Deputy Baird observed that Ms. Gilliland, who was very upset and crying, had a split and swollen lip. Ms. Gilliland told him that she had been in an altercation with her boyfriend. Ms. Gilliland refused medical assistance at the scene. Deputy Baird did not smell alcohol on Ms. Gilliland’s breath or observe any signs that she was under the influence that night.
After Deputy Baird spoke to Ms. Gilli-land, deputies searched and found Ms. Gil-liland’s keys in a grassy area on the side of River Road. The deputies did not find defendant during their search.
4At trial, Ms. Gilliland testified that she and defendant had been in a “volatile” relationship for “a couple” of years, and she had lived with him during 2009. She admitted that she was afraid of defendant.
She testified regarding the incident in question that, while she and defendant were arguing, it was dark in the car. Further, she could not see if defendant hit her with his open hand or a closed fist, but she did know that she “did get hit” and defendant was very angry. Furthermore, she did not consent to defendant hitting her. With regard to the injuries she sustained on the night in question, Ms. Gilliland stated that her teeth, gums, sinuses, face, and head hurt. Finally, she testified that she did not go to work for a week and a half because of her “busted lip and abused face.”
At trial, the State and the defense stipulated that defendant was previously convicted of two separate domestic battery *631 offenses in St. Tammany Parish. After hearing the testimony and considering the evidence, the jury found defendant guilty as charged. This appeal follows.

Law and argument

On appeal, defendant raises five assignments of error and three pro se assignments of error. In his third pro se assignment of error, defendant argues that the trial judge erred by denying his motion for new trial. Specifically, he contends that the evidence was insufficient to support the verdict because the State failed to prove that the alleged crime he committed was an intentional act. Defendant notes that Ms. Gilliland was not sure how the incident occurred and did not testify that the act was intentional.
When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. Id. Therefore, we will address the sufficiency of the evidence at the outset.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In cases involving circumstantial evidence, the trial court must instruct the jury that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83; State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
In this cage, defendant was convicted of domestic abuse battery, third offense, in violation of La. R.S. 14:35.3. “Domestic abuse battery is the intentional | fiuse of force or violence committed by one household member upon the person of another household member.” La. R.S. 14:35.3(A).
On appeal, defendant’s sole contention with regard to sufficiency is that the State failed to prove he intentionally committed the crime. As it is the only issue presented for review, it is the only issue that will be addressed herein.
Criminal intent may be specific or general. La. R.S. 14:10. The statute in question, La. R.S. 14:35.3, does not state the level of intent to be proven. In the absence of qualifying provisions, the terms “intent” and “intentional” refer to “general *632 criminal intent.”[1] La. R.S. 14:11; State v. Williams, 11-427 (La.App. 5 Cir. 2/28/12), 88 So.3d 1102, 1111.
In State v. Updite, 47,007 (La.App. 2 Cir. 2/29/12), 87 So.3d 257, 258-61, the testimony revealed that the defendant shoved, hit, and choked his wife, even though the wife testified at trial that it was dark and she could not see if the defendant punched or pushed her.' Our brethren on the Second Circuit found that the evidence was sufficient to prove every element of the crime of domestic abuse battery beyond a reasonable doubt, which met the Jackson standard, noting that the detective who interviewed the victim testified she had visible bruising and that the victim had not mentioned any of her later excuses for the defendant’s actions when he interviewed her. The appellate court found that the testimony accepted by the trier of fact as credible supported the finding that the defendant committed a battery upon his wife. State v. Updite, 47,007 at 8-9, 87 So.3d at 261-62.
In the instant case, Ms. Gilliland testified that, during an argument, defendant hit her in the mouth, which split her lip. The bartender who saw Ms. |vGilliland within 30 minutes of the incident testified that Ms. Gilliland’s lip was “busted” and bleeding. The officer who arrived at the scene also testified that Ms. Gilliland had a swollen lip, and that Ms. Gilliland reported that she had been in an altercation with her boyfriend.
After hearing the testimony, the jury obviously found the State’s witnesses to be credible. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Although defendant contends he accidentally hit the victim, the evidence indicates defendant, in the ordinary course of human experience, must have known that his action of moving toward the driver and forcefully removing the keys from the ignition of a moving vehicle would result in him contacting the driver in a manner to which the driver had not consented.
In light of the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to prove that defendant intentionally used force on the victim, who was a current or former member of his household. As such, we find that this assignment of error lacks merit.
Returning to defendant’s first counseled assignment of error, defendant argues that the trial judge erred when he allowed the material witness warrant to be issued even though the motion for material witness bond was missing key elements as required by La. R.S. 15:257. He contends that the motion for material witness bond was not supported by an affidavit, nor did it include a certificate of service or service instructions. Defendant also asserts that he was denied his opportunity to quash or respond to that motion because the State did not provide him with a copy of it.
IsThe State responds that the full justification for its request to have the victim arrested was in the motion and the attached exhibits. Moreover, the State con *633 tends that defendant has failed to cite to any authority in support of his contention that the motion was defective without the affidavit, noting that La. R.S. 15:257 does not require the State to have its motion served on defense counsel.
The record reflects that, on August 19, 2011, the State filed a motion for material witness bond, requesting that the trial court issue a bench warrant for the immediate arrest of Tanya Gilliland, an essential witness for the prosecution in the instant case. In that motion, the State alleged that an investigator contacted Ms. Gilliland to advise her to appear for court hearings. In response, Ms. Gilliland, who was hostile and threatening, advised that she would not appear at trial. Further, according to the motion, St. Tammany Parish Deputies attempted to serve a subpoena upon the victim at the victim’s last known address, and defendant, who occupied the residence, informed the deputy that Ms. Gilli-land did not live there. Lastly, the State contended that the victim would fail to appear at trial.
The State attached two letters to its motion. This first was a letter dated April 25, 2011, from the victim to the district court judge presiding over this case. In that letter, the victim stated that she was dismayed at the lack of professionalism exhibited by the St. Charles Parish District Attorney’s Office. Further, in her opinion, the St. Charles Parish Sheriffs Office’s treatment of her was “appalling.” She also stated that she had no desire to pursue criminal charges, did not want the St. Charles Parish authorities to contact her again, and would not appear in court.
The second letter, which was dated April 25, 2011, was from the victim to Harry Morel, the District Attorney for St. Charles Parish. The letter purported to be a formal complaint against his office. She stated that she had been threatened |¡iwith arrest if she did not appear. She again stated that she did not wish to pursue criminal charges in this matter and would not appear in court.
First, we note that defendant failed to file a motion to quash this material witness warrant before trial and failed to contemporaneously object to the witness’s testimony at trial. “An error cannot be availed of after verdict unless it was objected to at the time of occurrence.” La.C.Cr.P. art. 841. Here, there was no contemporaneous objection and any error was not preserved for review.
Furthermore, even if we were to review the trial court’s ruling, we find any error was harmless. At the time the crime was committed on June 19, 2010,[2] La. R.S. 15:257 provided as follows:
Whenever it shall appear, upon motion of the district attorney or upon motion of a defendant supported by his affidavit, that the testimony of any witness is essential to the prosecution or the defense, as the case may be, and that there are good grounds to fear that said witness may depart or be taken from the jurisdiction of the court, a judge, as defined in Article 931 of the of the Code of Criminal Procedure, shall issue a warrant for the arrest of the witness. The witness shall be arrested and held in the parish jail, or such other suitable place as shall be designated by the court, until he gives an appearance bond as provided for defendants when admitted to bail, or until his testimony shall have been given *634 in the cause or dispensed with. (Emphasis added).
The motion prepared by ADA McElwee alleged that the victim told her investigator that she would not testify against defendant. The motion further asserted that the victim was avoiding service of subpoenas for pre-trial hearings and defendant’s trial.
The victim admitted at trial that she was in court because she was “told I had to come here and testify.” Further, the letters that she wrote to both the district court judge and the St. Charles Parish District Attorney indicated that she would not testify against defendant.
1 wWhen a witness is detained as a result of allegations in an affidavit submitted to the trial court pursuant to La. R.S. 15:257 and the witness subsequently admits the facts alleged, the detention is not unlawful. Cooks v. Rodenbeck, 97-1389 (La.App. 3d Cir. 04/29/98), 711 So.2d 444. Under the circumstances presented in the instant case, we find that the ADA’s actions in obtaining a material witness warrant for the victim, Tanya Gilliland, was in accordance with law and was appropriately motivated. State v. Garrett, 38,069 (La.App. 2 Cir. 12/19/03); 862 So.2d 1207, 1209-10, writ denied, 04-0475 (La.6/25/04); 876 So.2d 833. Here, the trial judge did not err in granting the State’s motion for a material witness warrant.
Further, regardless of the ADA’s motivation, or even if the warrant was wrongly obtained, it resulted in no harm. The State elicited testimony that the victim was an unwilling witness compelled to testify. Defendant’s counsel conducted a strong cross-examination of the victim in front of the jury. In the instant case, we find that the trial judge did not err by granting the motion for material witness bond, signing the order, and issuing an arrest warrant for Ms. Gilliland. This assignment lacks merit.
In his second counseled assignment of error, defendant argues that the trial judge erred when he gave an erroneous jury instruction in the initial jury charges, then repeated it when the jury sent back a question about those very same jury charges. Specifically, defendant contends that when the trial judge instructed the jury as to the elements of the charged crime and the responsive verdicts, he neglected to say that the jury had to find that defendant intentionally committed the offense.
The State responds that the jury was instructed numerous times that intent was a necessary element of the charged offense. The State further responds that In defense counsel participated in the compilation of, and he consented to, the final version of the jury instructions, and that the jury was instructed in the exact manner in which defense counsel deemed sufficient during the trial.
In the instant case, the trial judge instructed the jury with regard to criminal intent as follows:
Criminal intent may be specific or general. Specific criminal intent is that state of mind which exists when the circumstances indicate that the defendant actively desired the prescribed criminal consequences to follow his act or failure to act. General criminal intent is present when the circumstances indicate that the defendant must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. General criminal intent is always present when there is specific intent. Whether criminal intent is present must be determined in light of ordinary experience. Intent is a question of fact which may be inferred from the circumstances. You *635 may infer that the defendant intended the natural and probable consequences of his acts.
Immediately thereafter, the trial judge stated that defendant was charged with domestic abuse battery, third offense, which is defined as the intentional use of force or violence committed by one household member upon the person of another household member. The trial judge then listed the three elements the jurors had to find in order to convict defendant of domestic abuse battery, third offense, one being that “the defendant used force or violence upon the person of Tanya Gilli-land.”
Although the trial judge read the definition of battery, which is the intentional use of force or violence, he did not use the word “intentional” when he immediately thereafter listed the elements that needed to be proven. The word “intentional” was also omitted when the trial judge instructed the jury as to the elements necessary to prove the responsive verdicts of domestic abuse battery, second offense, and simple domestic abuse battery. Finally, the record reflects that defense counsel reviewed the jury instructions with the State and the trial judge | ^before they were read to the jury, did not object or comment on the use of the word “intentional.”
As noted previously, La.C.Cr.P. art. 841(A) provides: “An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” To preserve the right to appellate review of an alleged trial court error, a party must state a contemporaneous objection with the occurrence of the alleged error as well as the grounds for the objection. State v. Enclard, 03-283 (La.App. 5 Cir. 6/19/03), 850 So.2d 845, 853. The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that the problem may be cured by the judge, as well as to prevent the defendant from gambling on a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Ware, 01-194 (La.App. 5 Cir. 8/28/01), 795 So.2d 495, 504.
Both this Court and the Louisiana Supreme Court have held that a new basis for an objection may not be raised for the first time on appeal. State v. Cooks, 97-999 (La.9/9/98), 720 So.2d 637, 644, cert. denied, 526 U.S. 1042, 119 S.Ct. 1342, 143 L.Ed.2d 505 (1999); State v. Myers, 584 So.2d 242, 255 (La.App. 5 Cir.1991), writ denied, 588 So.2d 105 (La.1991), cert. denied, 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992) (arguments not raised in the trial court were not preserved for review). Because defendant did not contemporaneously object to the allegedly improper jury instructions, we find that this issue was not properly preserved for this Court’s consideration.
Moreover, even if this issue had been preserved, the argument lacks merit. When considering an allegedly improper jury instruction, a reviewing court must determine whether it is “reasonably likely” that the jury applied the challenged instruction in an unconstitutional manner, not whether it is possible that the jury | ^misapplied the instruction. State v. Martin, 04-924 (La.App. 5 Cir. 1/25/05), 895 So.2d 55, 60 (citing Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)).
In determining whether it is reasonably likely that the jurors applied the instruction unconstitutionally, the challenged terms are considered in relation to the instructions as a whole. Id. The test is whether, taking the instructions as a whole, reasonable persons of ordinary intelligence would understand the charge. *636 Id. (citing State v. West, 568 So.2d 1019, 1023 (La.1990)). A conviction will not be reversed on grounds of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Motion, 395 So.2d 1337, 1348 (La.1981), cert. denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981).
In the instant case, the record shows that the jury was told numerous times throughout the proceedings that intent was a necessary element of the charged offense. Accordingly, considering the instructions as a whole, we find that reasonable persons of ordinary intelligence would have understood that the State had to prove beyond a reasonable doubt that defendant intentionally used force or violence upon the victim. This assignment of error lacks merit.
In his third counseled assignment of error, defendant argues that the trial judge erred in denying his motion to recuse the district attorney for prosecutorial misconduct. La.C.Cr.P. art. 680 provides the grounds for recusation of a district attorney. That article states that a district attorney shall be recused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice;
(2) Is related to the party accused or to the party injured, or to the spouse of the accused or party injured, or to a party who is a focus of a grand jury investigation, to such an extent that it may appreciably influence him in the performance of the duties of his office; or
|u(3) Has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney.
A defendant attempting to recuse a district attorney on the basis of a personal interest in the cause which is in conflict with fair and impartial administration of justice has the burden of proving this ground for recusal by a preponderance of the evidence. State v. King, 06-2383 (La.4/27/07), 956 So.2d 562.
La.C.Cr.P. art. 681 provides the procedure for recusation of a district attorney:
A district attorney may recuse himself, whether a motion for his recusation has been filed or not, in any case in which a ground for recusation exists. A motion to recuse the district attorney shall be in writing and shall set forth the grounds therefor. The motion shall be filed in accordance with Article 521, and shall be tried in a contradictory hearing. If a ground for recusation is established the judge shall recuse the district attorney.
Regarding defendant’s oral motion to recuse the assistant district attorney on the morning of trial, first, the motion did not comply with the statutory requirements of La.C.Cr.P. art. 681. Second, defense counsel withdrew the motion to re-cuse and willingly proceeded to trial. There is nothing for this Court to review with respect to this oral motion to recuse.
With respect to the first written motion to recuse the district attorney, which was filed post-trial on October 11, 2011, the motion failed to point to any grounds for recusation listed in La.C.Cr.P. art. 680. Additionally, the record does not reflect that the prosecutor had a personal interest in the cause, which was in conflict with fair and impartial administration of justice under La.C.Cr.P. art. 680 A(1). Thus, we find that the trial judge did not err by denying the first written motion to recuse the district attorney. (See State v. Garrett, supra, the ADA’s Inactions in obtaining a material witness warrant were in accordance with the law and appropriately *637 motivated, and not prosecutorial misconduct.)
Regarding the second written motion to recuse the ADA, defendant alleged that the ADA had a “personal interest in the cause which was in conflict with fair and impartial administration of justice” because she obtained a material witness warrant for the victim. As noted above, however, this is not a valid ground for recusal of a district attorney. See, La.C.Cr.P. art. 680; State v. Garrett, supra. This assignment of error lacks merit.
In his fourth counseled assignment of error, defendant argues that the trial judge erred in denying his motion to recuse the trial judge. La.C.Cr.P. art. 671 specifies the grounds upon which a judge may be recused in a criminal case. The pertinent subparts of that article provide:
A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
[[Image here]]
(4) Is a witness in the cause;
[[Image here]]
(6) Would be unable, for any other reason, to conduct a fair and impartial trial. La.C.Cr.P. art. 674 provides the procedure for recusation of the trial judge:
A party desiring to recuse a trial judge shall file a written motion therefor assigning the ground for recusation. The motion shall be filed prior to commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, but prior to verdict or judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc, as provided in Article 675.
A trial judge is presumed to be impartial, and the burden is on the party seeking to recuse a judge to prove otherwise. State v. Strickland, 04-843 (La.App. 5 Cir. 3/1/05), 900 So.2d 885, 893, writ denied, 05-820 (La.6/17/05), 904 So.2d 683. The grounds for recusal based on bias or prejudice must amount to more than con-clusory allegations. State v. Galliano, 05-962 (La.App. 5 Cir. 8/29/06), 945 So.2d 701, 727-28, writ denied, 06-2367 (La.4/27/07), 955 So.2d 682.
In the instant case, we find that the trial judge did not err by denying the motion to recuse himself. Athough defendant alleged a valid ground for recusation under La.C.Cr.P. art. 671, the allegation that the trial judge was biased is conclusory. There is nothing in the record to reflect that the trial judge was biased, prejudiced, or personally interested in the cause. Further, the trial judge was not a witness in the case or unable to conduct a fair and impartial trial for any other reason. This assignment lacks merit.
In his fifth counseled assignment of error, defendant argues that the trial judge erred by failing to issue subpoenas in accordance with a valid subpoena request under La.C.Cr.P. art. 732.[3] The State responds that defendant could have filed the request with the Clerk of Court. *638 The State further responds that even if counsel had been successful in having the subpoenas issued, there is no reason to believe the results would have been any different because the victim’s testimony would have been the same.
On November 7, 2011, defendant filed a “Request for Subpoenas to Issue” for witnesses that defense counsel intended to call at the hearing on defendant’s motion for new trial. He stated that he was requesting the issuance of these subpoenas in accordance with the relevant provisions of the U.S. and Louisiana Constitutions regarding the rights of the accused to compel witnesses to testify on his behalf. These witnesses were the victim (Ms. Gilli-land), Lisa C. King, ADA|17Kim McElwee, Detective Chad Hertzog, Sergeant Jessica Mathere, and Deputy Gwen Jennings. The trial judge denied the motion as written on November 14, 2011, stating that mover did not need a court order to request a subpoena.
On November 17, 2011, at the hearing on the motion for new trial, defense counsel mentioned that he had submitted a written memorandum with exhibits because his “subpoenas were denied and not served.” The trial judge told him, “No, the process you used was denied.” He explained that defense counsel did not need the trial judge’s permission to issue a subpoena, and that he just had to file a request with the clerk’s office. The trial judge said he did not pass judgment on that one way or the other. Defense counsel replied that the problem was that the request was never taken off the trial judge’s desk and brought to the clerk’s office.
The trial judge again stated that the process for issuing subpoenas was to write a letter to the clerk’s office asking for subpoenas. Defense counsel stated that he did that, but because of the peculiar nature of the case and as a courtesy to the D.A. and the court, he submitted the request so the trial judge could see that defense counsel intended for one of the subpoenas to go to the ADA. Defense counsel asserted that since he had no witnesses and his motion for continuance was denied, he submitted on his written memorandum with attachments. The trial judge later denied the motion for new trial.
La.C.Cr.P. art. 731(A) provides that the court shall issue subpoenas for the compulsory attendance of witnesses at hearings or trials when requested to do so by the State or the defendant, and that clerks of court may issue subpoenas except as provided in Article 739.[4] However, a defendant’s inability to, obtain service of requested subpoenas will not be grounds for reversal of a conviction or for a new trial absent a showing of prejudicial error. To show prejudicial error, a defendant 118must demonstrate that the absent witness’s testimony would have been favorable to his defense and the possibility of a different outcome if that witness were to testify. State v. Jefferson, 04-1960 (La.App. 4 Cir. 12/21/05); 922 So.2d 577, 601, writ denied, 06-940 (La.10/27/06); 939 So.2d 1276.
In Jefferson, supra, the defendant argued that his constitutional right to present a defense was violated by the trial court’s failure to produce the witnesses he requested on his behalf. The Fourth Circuit found that the evidence was insufficient to support a finding that the defendant’s right to compulsory process was violated, since the record contained no indication as to what the two witnesses’ testimony would have been. Nevertheless, the Fourth Circuit also found that because the record was lacking any evidence as to *639 whether the subpoenas were ever issued or served upon those two witnesses, it reserved the defendant’s right to raise the issue by an application for post-conviction relief. State v. Jefferson, 04-1960 at 33-35, 922 So.2d at 600-02.
In the instant case, we find that the trial judge did not err by denying defense counsel’s request to issue subpoenas to compel witnesses to appear at the hearing on the motion for new trial. First, although Article 731 provides that the trial judge “shall” issue subpoenas when requested to do so by the State or the defendant, the trial judge correctly informed defendant that he could have the clerk’s office issue those subpoenas. Second, defendant has failed to demonstrate that the absent witnesses’ testimony would have been favorable to his defense and the possibility of a different outcome if those witnesses were to testify. This assignment of error lacks merit.
In his first pro se assignment of error, defendant argues that the trial judge’s active participation in plea negotiations escalated to the level of due process violations. He contends that the trial judge erred by stating during plea | ^negotiations that he would not sentence defendant to the maximum sentence, but then later imposed the maximum sentence after defendant chose to go to trial, even though this was his first felony conviction. Defendant asserts that the maximum sentence was constitutionally excessive.
First, and foremost, defendant did not enter a plea. Thus, any “plea negotiations” are irrelevant. Furthermore, the record clearly reflects that the trial judge did not participate in “plea negotiations,” but rather answered a question from defense counsel regarding a sentencing “cap” if defendant did enter a plea. This argument presents nothing for this Court to review.
With respect to defendant’s claim that his sentence is excessive, we disagree. First, we note that defendant did not file a motion to reconsider sentence. This Court has held that the failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Dupre, 03-256 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509. Accordingly, defendant is only entitled to a review for constitutional excessiveness.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334 (La.App. 5 Cir. 9/28/04); 885 So.2d 618, 622.
laoA trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court’s sentencing discretion, three factors are con *640 sidered:' 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Id. Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. Id.
In this case, defendant was convicted of third-offense domestic abuse battery. La. R.S. 14:35.8(E) provides that, on a conviction of third-offense domestic abuse battery, the offender shall be imprisoned with or without hard labor for not less than one year nor more than five years and shall be fined $2,000.00.
The record reflects that, at the sentencing hearing, the trial judge discussed the pre-sentencing investigation report. The PSI reflected defendant’s extensive criminal history and the criminal justice system’s failure to assist defendant in addressing his underlying problems. The trial judge noted that the PSI listed more than 20 documented violations of the law by defendant since 1999. The trial judge noted that defendant had been arrested for simple battery and domestic abuse battery a total of nine times, resulting in two convictions for simple battery and three convictions for domestic abuse battery. Further, defendant had been arrested for violating protective orders four times, resulting in two subsequent convictions.
The trial judge continued, stating that defendant had been arrested for |¾1 stalking or some form of harassment three times resulting in two convictions for misdemeanor stalking. He said that defendant had been sentenced to probation five times then, exhibited compliance issues, which ultimately resulted in probation revocations in three of the five supervision periods. The trial judge explained that the probation and parole office would not recommend defendant for any sort of probation or parole supervision due to defendant’s dishonesty regarding drug usage, defendant’s lack of remorse, failure to accept personal responsibility for his crimes, and unwillingness to comply with the orders of the court relative to protective orders.
Further, the trial judge asserted that he agreed with the Division of Probation and Parole that defendant should receive the maximum sentence allowable by law because of his extensive criminal history, both violent and nonviolent, and his status as a threat to others, including the victim. The trial judge remarked that defendant, who had at least nine misdemeanor convictions, had escalated to committing and being convicted of a felony, which was also a crime of violence.
The trial judge, based on the PSI report, defendant’s criminal record, and, especially, the facts of the instant offense, sentenced defendant to the maximum term of five years. He also fined defendant $2,000.00, the maximum amount allowed by law, which the trial judge agreed to suspend if the defendant had no contact with the victim or her family.
In State v. Thibeaux, 11-40 (La.App. 3 Cir. 8/3/11), 70 So.3d 1094, the defendant entered a plea of guilty to domestic abuse battery, third offense, for striking his wife and causing her to sustain a bloody lip and red marks on her face. The defendant was sentenced to five years at hard labor, with the first year to be served without benefit of parole, probation, or suspension of sentence. On rehearing, our brethren on the Third' Circuit found that the sentence was not 122excessive, noting that the defendant was 40 years old and had 14 convictions in a 21-year period, including several assault and battery and domestic abuse battery convictions.
In the instant case, defendant got angry at the victim while she was driving on the *641 Interstate, shifted the moving car into neutral, removed the keys from the ignition, then hit the victim in the face. His actions caused injury to his live-in girlfriend and put public safety of anyone traveling that road that night at issue.
The PSI shows that defendant has had an extensive criminal history from 1999 to the present, including two convictions for simple battery, three convictions for domestic abuse battery, and two convictions for violating protective orders. Notably, the victim in the instant case was the ■victim in at least two of his previous domestic abuse battery charges. Further, defendant’s probation has been revoked three of out five times that he has been placed on probation. Considering the nature of the crime, the nature and the background of the offender, and the sentence imposed for a similar crime, we find that the five-year maximum sentence was not constitutionally excessive. This assignment of error lacks merit.
In his second pro se assignment of error, defendant argues that the prosecutor overstepped her boundaries of ethical conduct with the use of coercion and threats toward the alleged victim in exchange for favorable testimony. This issue was also raised by appellate counsel in his third counseled assignment of error and addressed, infra.
Finally, defendant also argues that the prosecutor vindictively charged him with a felony (domestic abuse battery, third offense) rather than a misdemeanor (domestic abuse battery). La.C.Cr.P. art. 61 provides, “Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his [^district, and determines whom, when, and how he shall prosecute.” As such, the district attorney acted within his authority under La. C.Cr.P. art. 61. This assignment of error lacks merit.

Error patent discussion

As is our practice under La.C.Cr.P. art. 920, we have reviewed the record for errors patent. We note that the trial judge did not completely advise defendant of the provisions of La.C.Cr.P. art. 930.8. By way of this opinion, we inform defendant that, under La.C.Cr.P. art. 930.8, no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La.C.Cr.P. art. 914 or 922. State v. Roche, 05-237 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 767-68, writ denied, 06-1566 (La.1/8/07), 948 So.2d 120. In all other respects, defendant’s conviction and sentence are affirmed.

AFFIRMED

. General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2). Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1).

. Effective August 15, 2010, the Louisiana Legislature amended the italicized portions of La. R.S. 15:257 to provide instead that a material witness could be arrested if it was shown that it might become impracticable to secure the presence of the person by subpoena.

. La.C.Cr.P. art. 732 provides that a subpoena may order a person to produce at the trial or hearing, books, papers, documents, or any other tangible things in his possession or under his control, if a reasonably accurate description thereof is given; but the court shall vacate or modify the subpoena if it is unreasonable or oppressive.

. La.C.Cr.P. art. 739 sets forth restrictions on subpoenas for indigent defendants.