STATE OF LOUISIANA

VERSUS

RANDY FINK

NO. 20-KP-139

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 18-5357, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING


June 01, 2020


**ROBERT A. CHAISSON**
**JUDGE**


Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Robert A. Chaisson


**WRIT DENIED; CONVICTIONS AND SENTENCES AFFIRMED**
    **RAC**
    **SMC**
    **JGG**

COUNSEL FOR PLAINTIFF/RESPONDENT,
STATE OF LOUISIANA
 Honorable Paul D. Connick, Jr.
 Thomas J. Butler

DEFENDANT/RELATOR,
RANDY FINK
 In Proper Person

**CHAISSON, J.**

Defendant, Randy Fink, seeks supervisory review of his three misdemeanor convictions. He specifically challenges the sufficiency of the evidence used to convict him, various evidentiary rulings, and the imposition of a non-expiring protective order.[1] For the reasons that follow, we deny defendant's writ application and affirm his convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**

On October 9, 2018, the Jefferson Parish District Attorney filed a bill of information charging defendant with three misdemeanors: domestic abuse battery of Nicole Keating, in violation of La. R.S. 14:35.3 (count one), simple battery of Nicole Bourgeois, in violation of La. R.S. 14:35 (count two), and violation of a protective order issued on August 22, 2018, in violation of La. R.S. 14:79 (count three). On October 17, 2019, defendant proceeded to a judge trial.

Several witnesses testified at trial about the circumstances surrounding the charged offenses. Ms. Keating, defendant's former girlfriend and the victim in count one, testified that she met defendant in 2014, and that they began a relationship and eventually moved in together. According to Ms. Keating, she broke up with defendant on August 16, 2018,[2] and later that same night, she went with her friend, Nicole Bourgeois, to the Caddyshack Bar in Jefferson Parish for dinner and drinks. At some point during the evening, Ms. Keating went to the women's restroom, and as she was closing the door to the stall, defendant pushed the stall door open.[3] Ms. Keating explained that when she tried to leave, defendant put one of his hands by her clavicle, pushed her back, and told her that she was not leaving and that he wanted to have sex in the restroom. Ms. Keating then heard

---

[1] We note that both the trial court at sentencing and defendant in this writ application refer to this order as a "permanent stay away order."

[2] Ms. Keating claimed that on that day, she and defendant were at a storage unit and that while defendant was in the storage locker, she saw her opportunity to leave. She went to the front of the unit, called her father to pick her up, and then had him drop her off at her aunt's house.

[3] Ms. Keating testified that she did not invite defendant to go to the Caddyshack Bar that evening and did not realize he was there until he followed her into the restroom.

someone come into the restroom and asked that person to get "Gab," who is Nicole Bourgeois.

During her trial testimony, Ms. Keating relayed that Ms. Bourgeois came into the restroom and tried to pull her out of the stall. Although defendant pushed Ms. Keating back, she eventually escaped. At trial, Ms. Keating testified that she felt trapped, scared, and in danger. Further, she asserted that she had marks as a result of defendant's actions and identified a photograph of herself that reflected redness in the area where defendant had placed his hands on her.

Ms. Bourgeois, the victim in count two, testified at trial and corroborated Ms. Keating's testimony that on August 16, 2018, the two women went to the Caddyshack Bar for dinner and drinks. According to Ms. Bourgeois, at some point during the evening, one of the employees approached her and told her that there was a gentleman in the restroom with her friend. When Ms. Bourgeois entered the restroom, she saw defendant cornering Ms. Keating in a stall. Ms. Bourgeois explained that Ms. Keating was up against the wall in the corner of the stall, and defendant was standing in front of her with his back to the door. Ms. Bourgeois asked defendant what he was doing there, pushed the stall door open, and pulled Ms. Keating out of the stall. Ms. Bourgeois, who was standing between Ms. Keating and defendant, then pushed Ms. Keating out of the restroom. As Ms. Bourgeois did so, defendant put one hand around the bottom part of her neck, pushed her against the wall, and threatened to hurt her and her children if she tried to keep Ms. Keating away from him. Ms. Bourgeois then ran out the restroom and called 9-1-1.

Deputy Chase Matte of the Jefferson Parish Sheriff's Office responded to the call. At trial, Deputy Matte testified that he arrived at the Caddyshack Bar in the early morning hours of August 17, 2018, in response to the call of a disturbance and possible protective order violation. Upon his arrival, he observed several

2

people in front of the bar pointing towards defendant.  Deputy Matte approached defendant, brought him across the street to his patrol car, detained him with handcuffs, and advised him of his Miranda[4] rights.

After isolating defendant, Deputy Matte identified and spoke to the two complainants, Ms. Keating and Ms. Bourgeois.  He described both women as slightly intoxicated but maintained that they were "coherent enough" and were able to speak with him clearly about the events that took place.  Deputy Matte testified that he did not observe any visible injuries to Ms. Keating at the scene; however, when he was reviewing the photographs taken the night of the incident, he did notice some marks on Ms. Keating's neck.  With regard to Ms. Bourgeois, Deputy Matte testified that he did observe redness around her neck when he talked to her at the scene.

During the course of his investigation at the scene, Deputy Matte obtained written statements from both Ms. Keating and Ms. Bourgeois, and he also learned that there was no protective order in effect against defendant at the time.  However, Deputy Matte nonetheless arrested defendant for domestic abuse battery of Ms. Keating and simple battery of Ms. Bourgeois and transported him to the Jefferson Parish Correctional Center.

At trial, evidence was also presented that subsequent to the incident at the Caddyshack Bar, a protective order was issued against defendant in favor of Ms. Keating, which was effective from August 22, 2018, until November 22, 2018. The order, which was introduced at trial, directed defendant not to contact, abuse, harass, stalk, monitor, or track Ms. Keating, or go within two hundred feet of her or one hundred yards of her residence.

Deputy Paul Lalla of the Jefferson Parish Sheriff's Office testified regarding his arrest of defendant for violation of this order.  In particular, Deputy Lalla

---

[4] *Miranda  v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

relayed that on August 29, 2018, at approximately 5:30 a.m., he investigated a suspicious person complaint at Ninth Street and Severn Avenue in Jefferson Parish. Upon his arrival to this area, he came into contact with an individual, identified in court as defendant, straddling his bicycle on the corner. Defendant told the officer that he had Ubered his bicycle and himself to that location and that he was just exercising and riding around waiting for a job interview.

Deputy Lalla collected identifying information from defendant, ran his name through the Arms and Mobile Cop, and discovered that there was a protective order for a person using a Ninth Street location. After he confirmed that the protective order was still in effect for that address, he arrested defendant, read him his rights, and transported him to jail. During his testimony, after viewing a Google map of the area, Deputy Lalla confirmed that defendant was within approximately one hundred yards from the house encompassed by the protective order.

After the State presented its case, defendant relayed his version of events. According to defendant, the night prior to the Caddyshack incident, he and Ms. Keating went to the Caddyshack Bar and then spent the night together at a hotel. The following morning, they went to the storage locker, and defendant noticed that Ms. Keating started acting "weird" and distant. Defendant did not know where Ms. Keating went and was concerned about her, so later that evening, he went to the Caddyshack Bar to try to find her and talk to her about the status of their relationship. At trial, defendant maintained that he did not think that they were broken up when he went looking for her at the Caddyshack Bar.

Once in the bar, he observed Ms. Keating in the back shooting darts. When Ms. Keating passed him, he followed her into the restroom to talk to her. As he was in the stall talking to Ms. Keating, Ms. Bourgeois came in, told defendant to get out, reached into the stall, and pulled Ms. Keating out. Defendant testified that

4

after Ms. Bourgeois pulled Ms. Keating out of the stall, he walked outside the restroom and was asked to leave by the manager. Defendant then left the bar and went outside.

At trial, defendant admitted that he did reach for Ms. Keating's hand to hold it as he was talking to her, but he denied touching her chest, pushing, hitting, or choking her that night. With regard to Ms. Bourgeois, defendant denied that he grabbed, hit, choked, physically abused, punched, or pushed her and also denied threatening Ms. Bourgeois and her children.

With regard to the protective order, defendant admitted that on August 29, 2018, he went to Severn Avenue because he thought Ms. Keating was cheating on him. He relayed that he saw a car in front of her house, which confirmed his suspicion about her cheating. Defendant maintained that he did not go in front of her house, that he stayed one hundred yards away, that he did not have any weapons, and that he "had no intentions of doing anything."

After considering the testimony and evidence presented, the trial court found defendant guilty as charged. On October 24, 2019, the trial court imposed a sentence of six months on each count to run concurrently, suspended all but forty-eight hours of the sentence, and placed defendant on active probation for two years subject to various conditions. In addition, the trial court imposed a non-expiring protective order directing defendant to have absolutely no contact with Ms. Keating.

Defendant thereafter filed a motion for appeal, which was granted by the trial court. On March 20, 2020, this Court dismissed defendant's appeal for lack of jurisdiction but reserved his right to file an application for a supervisory writ of review in compliance with U.R.C.A. Rule 4-1 *et seq.* See *State v. Fink*, 20-115 (La. App. 5 Cir. 3/20/20), __ So.3d __. In response to this Court's opinion, defendant has filed the instant writ application.

5

**DISCUSSION**

In his writ application, defendant challenges the sufficiency of the evidence used to convict him, various evidentiary rulings, and the imposition of a non-expiring protective order.

*Sufficiency of the Evidence*

In his writ application, defendant challenges the sufficiency of the evidence used to convict him of all three offenses. In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00-674 (La. 6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).

In the present case, defendant was convicted of domestic abuse battery of Nicole Keating, his former live-in girlfriend. La. R.S. 14:35.3(A) defines domestic abuse battery as "the intentional use of force or violence committed by one household member or family member upon the person of another household member or family member." Criminal intent may be specific or general. La. R.S. 14:10. La. R.S. 14:35.3 does not state the level of intent to be proven. In the absence of qualifying provisions, the terms "intent" and "intentional" refer to "general criminal intent." La. R.S. 14:11; *State v. Gatewood*, 12-281 (La. App. 5 Cir. 10/30/12), 103 So.3d 627, 631-32.

Defendant was also convicted of simple battery of Nicole Bourgeois. Simple battery is defined in La. R.S. 14:35(A) as a battery committed without the consent of the victim. A battery is defined in La. R.S. 14:33, in pertinent part, as the "intentional use of force or violence upon the person of another."

6

In the present case, we find that the State sufficiently proved the elements of these offenses, as set forth in the defining statutes. At trial, Ms. Keating testified that she and defendant were involved in a relationship for several years and lived together. Ms. Keating stated that on August 16, 2018, she ended her relationship with defendant, and later that evening, she went to the Caddyshack Bar with her friend, Ms. Bourgeois. At some point during the evening, defendant followed Ms. Keating into the women's restroom and cornered her in one of the stalls.

According to Ms. Keating, when she tried to leave, defendant put one of his hands on her clavicle, pushed her back, and told her she was not leaving. She further testified that as Ms. Bourgeois tried to pull her out of the stall, defendant pushed her again. Ms. Keating testified that she felt trapped, scared, and in danger, and that she did not consent to defendant pushing her. She also testified that she had marks as a result of defendant's actions and identified a photograph of herself that reflected redness in the area where defendant had placed his hands on her.

Ms. Bourgeois testified that at some point during the evening, one of the employees approached her and told her that there was a gentleman in the restroom with her friend. When Ms. Bourgeois entered the restroom, she saw defendant cornering Ms. Keating in a stall. Ms. Bourgeois explained that Ms. Keating was up against the wall in the corner of the stall, and defendant was standing in front of her with his back to the door. Ms. Bourgeois pushed the stall door open and pulled Ms. Keating out of the stall. Ms. Bourgeois, who was standing between Ms. Keating and defendant, then pushed Ms. Keating out of the bathroom, at which point defendant put one hand around the bottom part of her neck, pushed her against the wall, and threatened to hurt her and her children if she tried to keep Ms. Keating away from him. Deputy Matte testified that he observed redness around Ms. Bourgeois' neck when he talked to her at the scene. In addition, he identified

7

some redness below her neck in the photograph that was taken of Ms. Bourgeois the night of the incident.

In his writ application, defendant does not seem to focus on the State's failure to prove any essential element; rather, his primary complaint revolves around the credibility determinations of the trial court. Defendant asserts that this is a classic case of "he said she said, with little to no evidence to support the allegations." He contends that Ms. Keating and Ms. Bourgeois were clearly not credible. He particularly notes that they were intoxicated the night of the incident at the Caddyshack Bar and only made the battery allegations after it was discovered there was no protective order in place. In addition, he notes Deputy Matte's testimony that he did not observe any injuries on Ms. Keating the night of the incident, as well as inconsistencies in statements given by the victims at the time of the incident and at trial.

In the present case, the trial judge considered the testimony of the witnesses and any inconsistencies therein and obviously found the State's witnesses to be more credible than defendant. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of witnesses will not be reweighed on appeal. *State v. Rowan*, 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.

Considering the testimony and evidence presented at trial, we find that a rational trier of fact could have found the evidence was sufficient under the *Jackson* standard to support defendant's convictions for domestic abuse battery and simple battery.

We now turn our attention to the sufficiency of the evidence for defendant's conviction of violation of a protective order. Defendant does not contest that there was a protective order in effect, nor does he contest that he was in the vicinity of Ms. Keating's house. Rather, defendant challenges Deputy Lalla's estimate that he

8

was within one hundred yards of Ms. Keating's residence, specifically noting that the officer did not actually measure the distance.

In the present case, the trial court heard the officer's testimony that defendant was within one hundred yards of Ms. Keating's house. Deputy Lalla testified that he was familiar with the area as it was within his patrol area for the prior three and a half years and that his estimate of the distance was based upon his knowledge of houses and construction and general knowledge of distance and feet.[5] We find Deputy Lalla's testimony sufficient to establish that defendant was located within one hundred yards of Ms. Keating's residence. Accordingly, we find that the evidence presented was likewise sufficient under the *Jackson* standard to support defendant's conviction for violation of a protective order.

### *Evidentiary Rulings*

In his writ application, defendant complains that "there are many errors in the trial involving objections relative to testimony and evidence being allowed."

In the present case, defendant did not properly brief this issue. Rule 4-5 of the Uniform Rules - Courts of Appeal sets forth the items necessary for a proper submission of a writ application and specifically provides that the writ application should contain the assignments or specifications of errors and a memorandum in support of the application, in accordance with Rules 2-12.2 and 2-12.10. U.R.C.A. Rule 4-5(C)(5). Further, Rule 2-12.4(A)(9)[6] states, in part, that the appellant's brief shall include the argument, which shall contain:

> (a) appellant's contentions, with reference to the specific page numbers of the record and citations to the authorities on which the appellant relies,

---

[5] Although Deputy Lalla marked on a Google map printout the location of Ms. Keating's residence and the location where he encountered defendant, the trial court admitted that exhibit only for the purpose of showing the map of the area, not for purposes of scale.

[6] We recognize that U.R.C.A. Rule 2-12.4 relates to appeal briefs; however, U.R.C.A. Rule 4-8 specifically provides: "The Rules of the court pertaining to appeals and not conflicting with Rules specifically pertaining to applications for writs, when applicable and insofar as practicable, shall govern writ applications and the disposition thereof."

(b) for each assignment of error and issue for review, a concise statement of the applicable standard of review, which may appear in the discussion or under a separate heading placed before the discussion[,] …

In the present case, defendant did not properly assign or brief his arguments relating to the trial court's evidentiary rulings. He merely listed the page numbers and substance of the portions of the transcript, in outline form, that related to his claims of evidentiary errors and insufficient evidence.[7] He did not set forth specific assignments of error, did not present arguments, and failed to cite any authority for his complaints regarding the trial court's evidentiary rulings. Given these deficiencies, we consider defendant's claims relating to the evidentiary rulings abandoned.[8]

### *Imposition of Non-Expiring Protective Order*

In the present case, the trial court, at sentencing, imposed a non-expiring protective order directing defendant to have absolutely no contact with Ms. Keating and particularly ordered defendant "NOT TO abuse, harass, assault, stalk, follow, track, monitor, or threaten" her. Defendant asserts that the non-expiring protective order does not fit the crimes, and requests that, in the event his convictions are not overturned, the stay away order be reduced to two years as originally requested by the State.

La. R.S. 46:2136(F)(2)(a) specifically provides:

For any protective order granted by the court which directs the defendant to refrain from abusing, harassing, or interfering with the person as provided in R.S. 46:2135(A)(1), the court may grant the order to be effective for an indefinite period of time as provided by the provisions of this Paragraph on its own motion or by motion of the petitioner. The indefinite period shall be limited to the portion of the protective order which directs the defendant to refrain from abusing,

---

[7] We note that defendant also failed to properly brief his claims relating to the sufficiency of the evidence used to convict him. Nonetheless, we have reviewed the issue of insufficient evidence, in accordance with *State v. Raymo*, 419 So.2d 858, 861 (La. 1982).

[8] La. C.E. art. 103 (A)(2) provides: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and … [w]hen the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel." In the present case, even had defendant's arguments been properly briefed, we note that he failed to proffer any testimony or evidence after the trial court's rulings excluding evidence. See U.R.C.A. Rule 2-12.4(A)(9)(c).

harassing, or interfering with the person as provided in R.S. 46:2135(A)(1).

Based on the foregoing, we find that the trial court did not abuse its discretion or exceed its authority in imposing a non-expiring protective order under the circumstances of this case. Further, we note that La. R.S. 46:2136(D)(2) states, "On motion of any party, after a hearing, the court may modify the effective period of a protective order pursuant to Paragraph (F)(2) of this Section."

## CONCLUSION

For the reasons set forth herein, we deny defendant's writ application and affirm his convictions and sentences.

**WRIT DENIED; CONVICTIONS
AND SENTENCES AFFIRMED**

11

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JUNE 1, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

## 20-KP-139

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
THOMAS J. BUTLER (RESPONDENT)

### MAILED
RANDY FINK (RELATOR)
IN PROPER PERSON
222 NICKLAUS DRIVE
SLIDELL, LA 70458

HONORABLE PAUL D. CONNICK, JR.
(RESPONDENT)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053