# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2022

Lyle W. Cayce
Clerk

No. 20-20580

United States of America,

*Plaintiff—Appellee*,

*versus*

Deangelo Kelley,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CR-780-1

Before Jones, Southwick, and Oldham, *Circuit Judges*.
Edith H. Jones, *Circuit Judge*:

Appellant Deangelo Kelley challenges the district court's 1) denial of his motion to dismiss under the Speedy Trial Act, 2) imposition of a sentencing enhancement for reckless endangerment, and 3) adoption of the Presentence Investigation Report ("PSR") that treated two of his prior convictions as crimes of violence. We reject the first two grounds but must vacate and remand for resentencing in light of *Borden v. United States*, 141 S. Ct. 1817 (2021), and *United States v. Bates*, 24 F.4th 1017 (5th Cir. 2022) (*per curiam*).

No. 20-20580

## I. BACKGROUND

Kelley fled from Houston Police Department ("HPD") officers on April 6, 2019 after they stopped a vehicle in which he was a passenger. Kelley discharged his firearm while in flight, but the round struck the ground without causing any damage or harm to others.[1] The discharged round did, however, cause officers to retreat and enlist the services of a canine and a helicopter. While continuing the search for Kelley, an officer recovered "a Glock 17 9 mm handgun with an extended magazine containing 21 bullets attached."[2] Officers later discovered Kelley hiding in a tree and arrested him. Kelley conveyed that "he was trying to get away from officers because he did not want to go back to jail[,]"[3] and that "he did not intend to shoot officers[.]" He supposedly "just 'wanted to get rid of the gun.'"

The day after Kelley's arrest, "the Harris County District Attorney's Office, Intake Division, accepted charges for Evading on Foot (Second) and Felon in Possession of a Weapon." On April 11, 2019, an HPD task force officer ("TFO") sent the offense report to an Assistant United States Attorney. The AUSA then requested a firearm nexus report on April 15th. That same day, the TFO entreated the Harris County Assistant District

---

[1] Kelley "had a large hole in the front of his pants leg with a small burn mark just above his right knee." Officers surmised that Kelley may have "fired the round while the weapon was still in his waistband."

[2] Kelley initially claimed that he "bought the gun from a person at an apartment complex for $300 shortly after he was released from prison." But he apparently stole it from a vehicle in March 2019.

[3] Kelley previously pleaded guilty to two counts of attempted aggravated assault on public servants and sustained felony convictions as a result. He later served a three-year sentence following the revocation of his probation. Kelley had also been convicted of the unauthorized use of a vehicle, another felony under Texas law. Kelley admitted to knowing he was a felon at the time of his evasion. And his rap sheet, as discussed below, reveals many more interactions with law enforcement.

No. 20-20580

Attorney ("ADA") to "hold off on making a deal[]" with Kelley because the AUSA "agreed to take this."[4] Kelley had posted a $10,000 bond for his felon in possession charge and a $5,000 bond for his evading arrest charge on April 11th. But he remained in Harris County custody until April 23rd "because of a motion to revoke parole on a prior conviction." On April 29th, the TFO authored a report stating that AUSA had "accepted this case for prosecution."[5]

Kelley appeared in the Harris County 180th Criminal District Court on April 30th, May 23rd, and June 25th. The court granted extensions during the first two appearances to allow Kelley to retain counsel before finally appointing counsel at the final hearing. On June 27th, Harris County returned separate indictments against Kelley for unlawfully possessing a firearm and evading arrest. On August 14th, the TFO forwarded the AUSA a firearm nexus report prepared by a special agent with The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").[6] The TFO also requested "all body camera video associated with this case" that same day.

---

[4] The ADA also responded that same day: "Already have the hold on it, just let me know when she indicts please."

[5] Another HPD officer authored a report five days earlier that stated, "Kelley's criminal record **does** meet the requirements for federal prosecution and will be referred to [an] ATF Special Agent . . . for follow-up." (bold in original).

[6] The ATF agent completed the report on August 12th. It revealed that the gun "was manufactured in Austria and had, therefore, traveled in and affected interstate commerce." That provenance gave rise to the later federal charge. The district court noted that "[t]here [was] no explanation by either side as to why the report was requested in April and was still not available for review [until] August." The only post-request communication between the AUSA and TFO appears to have occurred on August 9th when the AUSA "followed up with [the] TFO . . .concerning whether the nexus report has been completed."

No. 20-20580

Kelley was separately charged on August 14, 2019 with Burglary of a Motor Vehicle in Harris County Criminal Court at Law 9.[7]  The next day, Kelley appeared in the 180th Criminal District Court on the evading arrest and felon in possession charges, and both counsel "requested further time to review discovery[.]"  The court reset the hearing and ordered Kelley to appear on October 10, 2019.  During the interim, the TFO obtained the body camera video associated with Kelley's arrest in this case on August 21st and gave it to the AUSA on September 11th.

The AUSA then consulted with TFO on October 9, 2019 "concerning a date for Grand Jury."  That same day, the Fort Bend County, Texas Sheriff arrested Kelley and charged him with evading arrest or detention with a vehicle.[8]  The Sheriff held Kelley without bond on the felon in possession charge, preventing Kelley from attending his October 10th hearing before the 180th Criminal District Court.  Harris County then immediately issued arrest warrants for Kelley based on the pending felon in possession and evasion charges from the April 2019 arrest and the burglary of a motor vehicle charge from the August 2019 arrest.

---

[7] The district court did not directly address this charge in its order denying the motion to dismiss as discussed below.  It arose after a witness observed Kelley allegedly stealing a jackhammer from a construction worker's van and recorded his license plate number.  Kelley (or someone else driving his car) also allegedly burgled at least one other work truck and stole a cell phone.  These charges are still pending.

[8] These charges are still pending and are unrelated to this case.  The government represented that Kelley was "arrested and charged with Felon in Possession and Evading Arrest (Second Offender) in Ft. Bend County, Texas."  But the district court located the indictment and surmised that it appeared "to allege an evading arrest offense as opposed to a gun charge."  And the PSR states that "on October 19, 2019, [Kelley] used a motor vehicle to flee from an officer who was attempting to lawfully arrest or detain [him]."

No. 20-20580

A federal grand jury indicted Kelley on October 24, 2019 for having been a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). The federal government then applied for a writ of *habeas corpus ad prosequendum* on December 19, 2019, requesting the court to order the United States Marshal to produce Kelley for an initial appearance on January 2, 2020. Kelley appeared in federal court on that date as ordered.

Kelley moved to dismiss the indictment on January 27, 2020, arguing that the government violated the Speedy Trial Act, 18 U.S.C. § 3161(b). He specifically contended that "actions taken by the state officials amounted to a ruse to detain him for later federal prosecution." The district court held an evidentiary hearing on February 24th and took the motion under advisement. Before ruling, the court held another hearing on March 2nd where it continued the case and clarified that it was "not counting any continuance time against the government other than any delay that may [have] already occurred up to this date." The court then denied the motion to dismiss on April 14th, finding that Kelley failed to show that the impending federal weapons charge "was 'the' or even 'a' primary [motivation for holding him] and [did] not prove[that] his 'detention' by state officials was a ruse."

The district court conducted a bench trial on August 13, 2020 and found Kelley guilty of possessing a firearm that travelled in interstate commerce despite having been previously convicted of a felony. Kelley did not contest any facts and "stipulate[d] to everything." The United States Probation Office then produced an initial PSR on October 1, 2020. Kelley raised several objections, and the Probation Office issued an amended final PSR as a result. The Probation Office then filed several addenda to the PSR, resulting in a total offense level of 27, a criminal history category of V,[9] and a

---

[9] Kelley previously pled guilty to two counts of attempted aggravated assault on public servants, one count of unauthorized use of a motor vehicle, two counts of evading

guideline imprisonment range of 120 months.[10]   Pertinent here, the PSR enhanced the base offense by four levels under U.S.S.G. § 2K2.1(b)(6)(B) because Kelley "used or possessed [a] firearm or ammunition in connection with another felony offense, to wit: evading arrest or detention."   It further enhanced the base offense by two levels under U.S.S.G. § 3C1.2 because Kelley "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer[.]"

The district court held a sentencing hearing on November 5, 2020 and sustained Kelley's objection to the four-level enhancement under USSG § 2K2.1(b)(6)(B), resulting in a total offense level of 23, because Kelley did not use his firearm to facilitate the felony at issue.  But the court overruled Kelley's second objection after finding that Kelley had "the reckless mindset trying to escape officers like he did with the discharge of the gun[,] . . . .[because] not only could it have injured Mr. Kelley or the officers, it could have injured some innocent person . . . walking down the street." The court adopted the PSR aside from the single objection it sustained.  The court then sentenced Kelley to 84 months of imprisonment and three years

---

arrest on separate occasions, two counts of unlawfully carrying a weapon on separate occasions, two counts of giving false information to an officer on separate occasions, and one count of possessing marijuana and one count of possessing a controlled substance on the same occasion.  The PSR calculated a base offense level of 22, pursuant to USSG § 2K2.1(a)(3), because Kelley's offense involved a semiautomatic firearm capable of accepting a large-capacity magazine, and his prior attempted aggravated assault convictions were considered crimes of violence.  Without prior crime of violence convictions, the base offense level would have been 20 under USSG § 2K2.1(a)(4).  This two-level disparity is the subject of the third issue on appeal.

[10] The guideline imprisonment range was 120 months to 150 months, but the statutorily authorized maximum sentence of 10 years was less than the maximum of the guideline range.

No. 20-20580

of supervised release.[11]   This sentence was in accord with the Probation Office's recommendation.  Kelley timely appealed both his conviction and sentence.

## II. STANDARD OF REVIEW

This court "review[s] the district court's factual findings regarding a Speedy Trial Act motion for clear error and its legal conclusions *de novo*." *United States v. De La Peña-Juarez*, 214 F.3d 594, 597 (5th Cir. 2000) (citation omitted).  It similarly "review[s] a district court's interpretation of the Sentencing Guidelines *de novo* and its factual findings for clear error." *United States v. Barry*, 978 F.3d 214, 217 (5th Cir. 2020) (citation omitted). Federal Rule of Criminal Procedure 52(b) otherwise affords this court discretion to correct unpreserved plain errors.   Such discretion may, however, only be exercised upon "a showing of (1) an error (2) that is clear or obvious, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings."   *United States v. Nava*, 762 F.3d 451, 452 (5th Cir. 2014) (citations omitted). Satisfying each requirement is difficult.  *Id.* (quotation omitted).

## III. DISCUSSION

As initially noted, Kelley contends that the district court erred by denying his motion to dismiss the indictment for a violation of the Speedy Trial Act.  Regarding his sentence, Kelley challenges the  obstruction of justice enhancement for reckless endangerment, and he maintains that the district court erred by treating his two previous attempted aggravated assault convictions as crimes of violence.  We address these in turn.

---

[11] The government requested a sentence at the "high-end" of the guidelines while Kelley sought downward variance and a sentence of 57 months.

## A.

The district court, while acknowledging "a level of cooperation between state officials and the United States Attorney's Office, . . . [did] not find [that] the State's primary purpose in holding Kelley was to allow federal authorities time to indict him." It therefore denied Kelley's motion to dismiss his indictment for violating the Speedy Trial Act. Kelley contends that "the state proceedings were a mere ruse to hold him pending federal prosecution."

The Speedy Trial Act provides in relevant part that:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

18 U.S.C. § 3161(b). If a suspect is not indicted within the time required by § 3161(b) as extended (if appropriate) by § 3161(h), then the government must "dismiss[] or otherwise drop[]" the charges against him. 18 U.S.C. § 3162(a).

"The Speedy Trial Act does not begin to run when the defendant is arrested by state authorities on state charges, nor does it begin when a federal detainer is lodged with state authorities." *United States v. Taylor*, 814 F.2d 172, 175 (5th Cir. 1987) (citing *United States v. Shahryar*, 719 F.2d 1522, 1524 (11th Cir. 1983)). Rather, an "individual is not arrested under [§] 3161(b) until he is taken into custody after a federal arrest for the purpose of responding to a federal charge." *United States v. Johnson*, 815 F.2d 309, 312 (5th Cir. 1987) (collecting cases). Thus, "even if state and federal officials

are cooperating at the time," an arrest by state officers "does not start the running of the 30-day time period." *Taylor*, 814 F.2d at 175 (citations omitted).

This court adopted the Ninth Circuit's "ruse exception" to prevent "federal criminal authorities [from] collud[ing] with civil or state officials to have those authorities detain a defendant pending federal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act." *United States v. De La Pena-Juarez*, 214 F.3d 594, 598 (5th Cir. 2000), *cert. denied*, 531 U.S. 983, 121 S. Ct. 437 (2000) (quoting *United States v. Cepeda-Luna*, 989 F.2d 353, 357 (9th Cir. 1993)). But the exception only applies "where the defendant demonstrates that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution."[12] *Id.* (citation omitted). "[I]f the detaining authorities have a lawful basis for their civil detention, a defendant is not entitled to invoke the exception." *Pasillas-Castanon*, 525 F.3d at 998.

The district court correctly interpreted the Speedy Trial Act for three reasons. First, despite the Harris County ADA's "hold" on prosecuting Kelley and the TFO's representation that the AUSA had "accepted this case for prosecution[,]"[13] "the Harris County state prosecution of Kelley was

---

[12] The Tenth Circuit has correctly explained that this inquiry requires the defendant to prove bad faith. *United States v. Pasillas-Castanon*, 525 F.3d 994, 998 n.1 (10th Cir. 2008) (citations omitted).

[13] Kelley primarily bases his argument in favor of dismissal on these communications. But the court cannot elevate initial words over subsequent actions to the contrary. The actions and reasons detailed above demonstrate that these initial communications do not constitute evidence of a ruse. It otherwise bears emphasizing that "routine cooperation between local and federal authorities is, by itself, wholly unobjectionable: 'Only by such an interchange of information can society be adequately protected against crime.'" *United States v. Alvarez-Sanchez*, 511 U.S. 350, 360, 114 S. Ct.

moving forward without the input [from] or coordination [with the] federal government." For example, "Kelley appeared in the Harris County gun case [at issue here] four different times[]" between "his April arrest and his federal indictment[.]" Kelley himself frustrated and prolonged the Harris County prosecution by requesting multiple continuances and then missing a hearing after being arrested in Fort Bend County for, once again, evading arrest. And Harris County returned separate indictments against Kelley on June 27, 2019 for unlawfully possessing a firearm and evading arrest.[14] That, as the district court reasoned, "would certainly [have been] superfluous if Harris County was holding Kelley merely to effectuate that federal prosecution."

Second, "[e]ven if the federal government took sole possession over the felon-in-possession charge, the Harris County Charge of evading arrest would remain." As the district court found, the latter charge "gave further justification for the State of Texas 'holding' Kelley." To be sure, "there were two separate indictments and two separate bonds issued in Kelley's Harris County cases[.]"[15] Because Harris County had a lawful basis to

---

1599, 1605 (1994) (quoting *United States v. Coppola*, 281 F.2d 340, 344 (2d Cir. 1960) (en banc), aff'd, 365 U.S. 762, 81 S. Ct. 884 (1961)).

[14] Kelley asserts that "[o]ther than obtaining indictments, the State made no effort to proceed with its prosecution." He even insists that the indictments themselves were "part of an elaborate scheme to hold [him] pending federal indictment." This is nonsense. There is nothing more that Harris County could have done to prosecute Kelley besides indicting him, and he has only himself to blame for any delay.

[15] Kelley contends that "[t]he separate indictments were simply a matter of local charging practice," and that "[w]hat mattered for Speedy Trial Act purposes was [his] arrest for the same offense regardless of whether there were other charges arising out of the same incident." Local practice or not, what actually mattered was that Harris County had a legally cognizable basis to prosecute Kelley that was separate and distinct from any federal prosecution. Whether the sperate charge arose out of the same incident does not negate its independent force.

"detain" Kelley that was completely independent of the potential federal basis for prosecuting him, the ruse exception to the Speedy Trial Act does not apply. *See Pasillas-Castanon*, 525 F.3d at 998.

Third, "a State may prosecute a defendant under state law even if the Federal Government . . . prosecute[s] him for the same conduct under a federal statute[]" and *vice versa*. *Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019). Thus, as the district court explained, "nothing would prevent both the state and the federal governments from charging and potentially convicting Mr. Kelley for the same crime of felon in possession of a firearm." Indeed, "[t]he Framers split the atom of sovereignty . . . . [by] establishing two orders of government, each with its own direct relationship, its own privity, its own set of mutual rights and obligations to the people who sustain it and are governed by it." *Saenz v. Roe*, 526 U.S. 489, 504, n.17, 119 S. Ct. 1518, 1527 (1999) (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838, 115 S. Ct. 1842, 1872 (1995) (Kennedy, J., concurring)). This court cannot assume that Harris County acted in bad faith, which Kelley must prove, where it had an independent obligation to prosecute Kelley.

The district court correctly denied Kelley's motion to dismiss the indictment under the Speedy Trial Act.

**B.**

Kelley next challenges a two-level enhancement under U.S.S.G. § 3C1.2 for reckless endangerment to another person during flight. The court found simply that Kelley's flight and discharge of a weapon could have injured him, officers, or others. Kelley argues that the government failed to show his reckless intent and failed to prove that his conduct created a "substantial risk" of danger to others. The district court's finding was not erroneous, much less clear error.

No. 20-20580

As applicable to the reckless endangerment enhancement, U.S.S.G. § 3C1.2, a person acts recklessly when he is:

> aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.

U.S.S.G. § 2A1.4, cmt. n.1; U.S.S.G. § 3C1.2, cmt. n.2. The standard of appellate review of a reckless endangerment finding is clear error, and the district court's finding will be upheld if the finding is plausible in light of the record as a whole. *United States v. Gould*, 529 F.3d 274, 276 (5th Cir. 2008) (citation omitted).

The finding of "reckless endangerment" here cannot be assailed. A reasonable person would not have discarded a pistol with 21 rounds in the magazine in a public area while running from police. By doing so, Kelley created a number of unjustified risks to himself and others. Luckily, Kelley did not harm anyone else, but this court "ha[s] not limited the application of the enhancement to situations resulting in actual harm or manifesting extremely dangerous conduct by a defendant." *United States v. Jimenez*, 323 F.3d 320, 323 (5th Cir. 2003). In comparable circumstances, we have applied the enhancement where a defendant discarded large quantities of methamphetamine in public areas.[16] *See United States v. Lima-Rivero*,

---

[16] Kelly relies on *United States v. Mukes*, 980 F.3d 526 (6th Cir. 2020) to argue that merely discarding the firearm in a public place was sufficient to support the enhancement. But that case is distinguishable for three reasons. First, there was an unresolved fact issue as to whether the suspect discarded his gun before or after taking flight. *Id.* at 530, 538. Kelley, however, undisputedly discarded his pistol while in flight. Second, the gun in *Mukes* "may not have been capable of discharging in its condition[,]" as it "did not discharge when it hit the ground." *Id.* at 538. Kelley's pistol, by contrast, did discharge a round. Third, in *Mukes*, "no search was needed to recover the firearm because [he]

No. 20-20580

971 F.3d 518, 520 (5th Cir. 2020) (citation omitted).  It would make little sense to reject the enhancement here.  The enhancement is further warranted because Kelley actually fired the pistol while officers pursued him.  Whether he intended to do so is irrelevant because running from officers while holding a gun even capable of discharging grossly deviates from the standard of care that a reasonable person would exercise.  This court therefore applied the enhancement in an unpublished decision where the defendant accidentally discharged a pistol during his flight before he threw it in a dumpster.  *United States v. Reid*, 684 F. App'x 406, 407–08 (5th Cir. 2017).[17]   Thus, the "reckless endangerment" enhancement was more than plausible in light of the record.  *See Gould*, 529 F.3d at 276 (citation omitted).

## C.

The PSR calculated a base offense level of 22 under U.S.S.G. § 2K2.1(a)(3) because 1) Kelley's present offense involved a semi-automatic firearm capable of accepting a large-capacity magazine, and 2) he committed the offense after serving three years in Texas prison for convictions on two counts of attempted aggravated assault on public servants.[18]   The district

---

dropped it in plain view of the police officers." *Id*. at 539.  But officers here had to search for Kelley's pistol, which increased the risk to them and others.

[17] Kelley attempts to distinguish *Reid* by emphasizing that the defendant there did not abandon his firearm at his first opportunity as Kelley supposedly did.  Kelly further stresses that he, unlike the defendant in *Reid*, did not threaten officers with his gun.  But Kelly was reckless in discarding a loaded, operable firearm in a public place.  The defendant in *Reid* at least threw his gun in a dumpster where it would pose a lesser risk.  That Kelley purportedly discarded his gun at the first opportunity is irrelevant at best and further demonstrates his recklessness at worst.  Moreover, an officer saw Kelley reach for the gun in his waistband when it discharged, and officers then had to call for backup.  Thus, even though Kelley did not directly threaten officers, his conduct demonstrably put them at risk.

[18] Kelley also emphasizes that the classification of the second conviction as a crime of violence resulted in the assessment of additional criminal history point.  *See* USSG § 4A1.1(e).  The PSR should have, according to Kelley, only assessed points for a single

No. 20-20580

court adopted this application and calculation without objection. Kelley now argues for the first time on appeal that the district court erred by doing so because his convictions for attempted aggravated assault were not crimes of violence.

> U.S.S.G. § 2K2.1(a)(3) provides for a base offense level of 22 if:
>
> (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense[.]

A crime of violence constitutes "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that [either:]"

> o  has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> o  is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 2K2.1, cmt. n.1; U.S.S.G. § 4B1.2(a). Such crimes of violence also "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2, cmt. n.1.

---

sentence because he "was charged in the same indictment with the two offenses and he was convicted and sentenced on the same day[.]" *See* USSG § 4A1.2(a)(2).

No. 20-20580

This court previously held that assault on a public servant in violation of TEX. PEN. CODE § 22.01(b)(1) is a crime of violence. *United States v. Anderson*, 559 F.3d 348, 354-56 (5th Cir.), *cert. denied*, 129 S. Ct. 2814 (2009). The Supreme Court has, however, since held that "an offense requiring the 'use of physical force against the person of another' does not include offenses with a *mens rea* of recklessness." *United States v. Gomez-Gomez*, 23 F.4th 575, 577 (5th Cir. 2022) (quoting *Borden v. United States*, 141 S. Ct. 1817, 1821-22, 1825 (2021) 141 S. Ct. at 1821–22, 1825 (Kagan, J., writing for four justices); *id*. at 1835 (Thomas, J., concurring only in the judgment)). As a result, we must "interpret U.S.S.G. § 4B1.2(a)(1) . . . to . . . exclude crimes that can be committed negligently or recklessly from the definition of 'crime of violence.'" *United States v. Garner*, 28 F.4th 678, 682 (5th Cir. 2022) (citing *United States v. Greer*, 20 F.4th 1071, 1075 (5th Cir. 2021)). And the Texas assault statue "includes three indivisible mental states, one of which is recklessness." *Gomez-Gomez*, 23 F.4th at 577 (citing TEX. PENAL CODE § 22.01(a)(1) (defining "[a]ssault" as "intentionally, knowingly, or recklessly caus[ing] bodily injury to another"); *Gomez-Perez v. Lynch*, 829 F.3d 323, 326-28 (5th Cir. 2016) (holding that the three alternative mental states in § 22.01(a)(1) are indivisible)).

The application of U.S.S.G. § 2K2.1(a)(3) was plainly wrong.[19] "[B]ecause Texas assault of a public servant can be committed recklessly, [Kelley did] not commit[] a crime of violence as defined by the Sentencing

---

[19] By finding plain error, the court casts no aspersions on the district court's decision to adopt the PSR's application of U.S.S.G. § 2K2.1(a)(3). Neither the Probation Office nor the district court had the benefit of *Borden* or this court's subsequent decisions interpreting it. Indeed, Kelley himself did not even object to applying § 2K2.1(a)(3). The district court acted correctly under the prevailing law at the time.

No. 20-20580

Guidelines[] . . . ."[20]  *United States v. Bates*, 24 F.4th 1017, 1019 (5th Cir. 2022) (*per curiam*); *see also Greer*, 20 F.4th at 1075 (5th Cir. 2021).  It is plain, post-*Borden*, that applying § 2K2.1(a)(3) to the convictions at issue was in error.[21]  *See Nava*, 762 F.3d at 452 (5th Cir. 2014) (citations omitted).

Applying § 2K2.1(a)(3) also affected Kelley's substantial rights and seriously affected the fairness, integrity, and public reputation of judicial proceedings.  Without the two qualifying prior convictions for crimes of violence, Kelley maintains that his base offense level would drop from 22 to 20 under § 2K2.1(a)(4)(B), and that he would receive at least one less criminal history point, which would result in a criminal history category of IV.[22]  USSG §§ 4A1.1(e), 4A1.2(a)(2).  This court takes no position on the ultimate guidelines calculation on remand, or on what the district court should do in resentencing, but a base offense level of 20 and a criminal history category of IV could yield a guidelines range of 51 to 63 months of imprisonment under the U.S.S.G. Sentencing Table. Kelley is serving an 84-month sentence, nearly 20 months longer than the high end of his proffered alternative guidelines range.  That disparity is enough to demonstrate an

---

[20] The government has also conceded in at least one other case that a conviction under Tex. Pen. Code § 22.01(a)(1) "cannot constitute a crime of violence."  *See United States v. Sosa*, 2022 WL 832242, at *1 (5th Cir. Mar. 21, 2022) (*per curiam*).

[21] The government cites no post-*Borden* decision to the contrary and devotes only three paragraphs to refuting the presence of plain error here.  In fact, the government ignored *Borden* entirely despite Kelley's reliance on the decision.

[22] The PSR calculated a criminal history score of 10, which resulted in a criminal history category of V.  A criminal history score of 9 would, however, seemingly result in a criminal history category of IV, according to the U.S.S.G. Sentencing Table.  The government inexplicably does not address the third and fourth prongs of plain error review, much less even attempt to refute Kelley's alternative base offense level and criminal history category calculations that yield a vastly different guidelines range.  The court would have benefitted from such briefing because if the imposed sentence remained within the new guidelines range, Kelley would have suffered no prejudice.

No. 20-20580

effect on substantial rights.[23]  *See Nava*, 762 F.3d at 452 (5th Cir. 2014) (citations omitted).  In addition, we are required to hold that a plain error of this sort violates the fourth prong of plain error analysis. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911 (2018).  Accordingly, this court must vacate Kelley's sentence and remand for resentencing.

## IV. CONCLUSION

Kelley's sentence is VACATED, and the case is REMANDED for resentencing on the basis explained above.

---

[23] Unlike in other similar cases, this court cannot affirm on the basis that the district court would have imposed the same sentence regardless of any errors in calculating the guidelines range. *See United States v. Bomar*, 2022 WL 964211, at *1 (5th Cir. Mar. 30, 2022) (*per curiam*).  The district court's sentencing colloquy did not include any specific reasoning for imposing an 84-month sentence of imprisonment, much less suggest that it would have imposed the same sentence regardless of the guidelines range.  The only relevant commentary regarding the term of imprisonment included the following remarks: "I'm not downwardly departing. I do not find that this case is outside of the heartland and I'm also not downwardly departing because of the number of arrests and convictions that the defendant has been involved with weapons."  Those remarks do not permit affirmance based on harmless error.  But, again, the district court remains free to reach whatever guidelines calculation it deems appropriate on remand; it merely cannot apply U.S.S.G. § 2K2.1(a)(3).

ANDREW S. OLDHAM, *Circuit Judge*, concurring in the judgment:

The court vacates Kelley's sentence and remands on the ground that the district court made a plain Guidelines error. *See* FED. R. CRIM. P. 52(b). Precedent obligates us to do that, so I concur. But this is another circumstance where it's hard to identify an "error," much less a "plain" one. *See United States v. del Carpio Frescas*, 932 F.3d 324, 333–44 (5th Cir. 2019) (Oldham, J., concurring).

Let's start with how plain error works. It's well-settled that "[a]n error is not plain under current law if a defendant's theory requires the extension of precedent." *United States v. Trejo*, 610 F.3d 308, 319 (5th Cir. 2010) (quotation omitted). So suppose at *T1*, the time of the district court's ruling, the law was unsettled. Ruling for the defendant on the relevant issue would've required extending existing precedents. Then at *T2*, when we decide the appeal, the law *remains* unsettled. Result? Any error isn't plain because the "defendant's theory requires the extension of precedent." *Ibid.* (quotation omitted); *see Henderson v. United States*, 568 U.S. 266, 278 (2013) ("Rule 52(b)'s requirement that an error be 'plain' means that lower court decisions that are questionable but not plainly wrong (at time of trial or at time of appeal) fall outside the Rule's scope." (alteration omitted)). We have I-don't-know-how-many precedents holding as much. *See, e.g.*, *United States v. Cabello*, --- F.4th ---, 2022 WL 1421400, at *7–8 (5th Cir. May 5, 2022) (collecting a small handful).

Now take today's case. In 2020, the district court sentenced Kelley. At that *T1\**, the law wasn't unsettled. Rather, "the district court acted correctly under the prevailing law at the time." *Ante*, at 15 n.19. The district court relied on *United States v. Anderson*, 559 F.3d 348 (5th Cir.), *cert. denied*, 129 S. Ct. 2814 (2009), for the proposition that Texas assault on a public servant is a crime of violence, *see ante*, at 15. You might think that's the end

of the plain-error inquiry. After all, the whole point of the plain-error doctrine is to ask whether the law was so settled *at time T1\** that the district court should've noticed the error *sua sponte*—without needing the benefit of an objection from anyone.

But alas. "According to the Supreme Court . . . a district judge's decision that was plainly correct at the time it was made can be plainly wrong at the time of appeal." *del Carpio Frescas*, 932 F.3d at 341 (Oldham, J., concurring) (citing *Johnson v. United States*, 520 U.S. 461, 467–68 (1997)). Here, that means what the district court did at *T1\** is irrelevant. What matters is that, at the later time *T2\**, after the district court's ruling and before this appeal, the Supreme Court decided *Borden v. United States*, 141 S. Ct. 1817 (2021). That changed the law and somehow rendered the district judge's decision—which was plainly *right* at *T1\**—retroactively plainly wrong.

Hold on, you might say. Isn't this just the ordinary rule that a legal change applies to all cases that are pending on the day of the change? Well, yes and no. Yes, it's true that newly announced decisions apply to cases pending on direct appeal. *See Griffith v. Kentucky*, 479 U.S. 314, 322 (1987). But no, a litigant ordinarily can't *fail to preserve an issue at trial* and then undo that forfeiture by pointing out that the law later changed. *See, e.g.*, *Gezu v. Charter Commc'ns*, 17 F.4th 547, 555 (5th Cir. 2021) (holding, "a party forfeits an argument by failing to raise it in the first instance in the district court," without giving any exception for instances of legal change (quotation omitted)).

And that's what makes all of this so odd. When it comes to the first two plain-error prongs, precedent constrains us to treat the forfeiting defendant and the preserving defendant *identically* in situations like this. That result turns Rule 52 on its head, because the whole point of that rule is to treat

them differently. And this is particularly head-scratching from the perspective of the conscientious district judge. Because remember, that judge got it exactly right at time $T1^*$. So the only way for that judge to avoid reversal at time $T2^*$ is to (A) have the powers of Nostradamus at time $T1^*$, (B) defy then-controlling precedent, and (C) do all of it *sua sponte*, without the benefit of an objection from anyone.