# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 13, 2025

Lyle W. Cayce
Clerk

———————

No. 24-30483

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Mark Abercrombie,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:24-CR-14-1

_____

Before Wiener, Douglas, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Mark Abercrombie appeals his 132-month sentence for possession of a firearm subsequent to a felony conviction, in violation of 18 U.S.C. § 922(g)(1). We AFFIRM.

I

In April 2024, Mark Abercrombie pleaded guilty, pursuant to a plea agreement without an appeal waiver, to possession of a firearm subsequent

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

to a felony conviction, in violation of 18 U.S.C. § 922(g)(1). The probation officer prepared a presentence investigation report ("PSR") and determined that Abercrombie's base offense level was 26 pursuant to U.S.S.G. § 2K2.1(a)(1) because Abercrombie had previously sustained at least two felony convictions for "crimes of violence"—a 2016 Louisiana conviction for "Domestic Abuse Battery by Strangulation" that he committed on March 24, 2016, for which he was sentenced to 1 year and 6 months' imprisonment, and a 2019 Louisiana conviction for "Domestic Abuse Battery-3rd Offense" that he committed on October 13, 2018, for which he was sentenced to five years' imprisonment.

The PSR's criminal history section also showed that Abercrombie had a 2013 Louisiana conviction for "Domestic Abuse Battery" that he committed on January 27, 2013, and for which he was sentenced to two years of imprisonment. In its narrative of the facts underlying the offense, the PSR detailed that Abercrombie began beating his girlfriend's four-year-old son after he spilled Sprite. According to the PSR, Abercrombie's girlfriend shoved Abercrombie away from her son, and Abercrombie grabbed his girlfriend by the throat and began choking her. This 2013 conviction, however, was not listed as one of the "crimes of violence" supporting the PSR's application of the § 2K2.1(a)(1) enhancement.

After several adjustments,[1] Abercrombie's total offense level was 25. That total offense level, coupled with a criminal history category of VI, resulted in a Guidelines range of 110 to 137 months of imprisonment. Neither the Government nor Abercrombie objected to the PSR. At sentencing, the district court adopted the PSR without change and sentenced Abercrombie

---

[1] The PSR increased Abercrombie's offense level by two levels to reflect that the firearm at issue was stolen. Abercrombie's acceptance of responsibility, however, decreased his offense level by three levels.

within the calculated Guidelines range to 132 months of imprisonment, followed by three years of supervised release. Abercrombie timely filed a notice of appeal.

After briefing was complete, the Government filed an opposed motion to supplement the record on appeal with minutes reports from the state court proceedings of Abercrombie's domestic abuse convictions.

## II

Our review is for plain error because Abercrombie did not object to the district court's calculation of his base offense level under § 2K2.1(a)(1). *See United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009). Under plain error review, it is Abercrombie's burden to show (1) a forfeited error that is (2) clear or obvious and (3) affects his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If he does so, we have the discretion to correct the reversible plain error, but only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

## III

Abercrombie challenges the district court's calculation on two grounds. First, he contends that the district court erred by relying on the PSR only to conclude that his prior convictions constituted crimes of violence under U.S.S.G. § 4B1.2(a). Second, in light of *Borden v. United States*, 593 U.S. 420 (2021), and *United States v. Garner*, 28 F.4th 678 (5th Cir. 2022) (per curiam), he argues that his Louisiana domestic abuse battery convictions do not constitute crimes of violence because they are general intent crimes that can be committed recklessly or negligently. According to Abercrombie, the district court's clear errors affected his substantial rights,

No. 24-30483

as his Guidelines range would have been significantly lower absent the errors. We address each argument in turn.

A

We first consider whether the district court clearly erred by relying solely on the PSR to make its crime of violence determination.

Section 2K2.1(a)(1) of the Guidelines instructs that a defendant's base offense level is 26 if the offense involved a qualifying firearm[2] and "the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." A crime of violence under § 2K2.1 "has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." § 2K2.1, cmt. (n.1). Section 4B1.2(a) provides that an offense qualifies as a crime of violence if it is "punishable by imprisonment for a term exceeding one year" and "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another" or (2) if the crime is one of a list of enumerated offenses. § 4B1.2(a)(1)–(2).[3] Subsections 1 and 2 of § 4B1.2(a) are often referred to as the "force clause" and the "enumerated offense clause," respectively. *Garner*, 28 F.4th at 681.

Courts determine whether a prior conviction constitutes a crime of violence by "apply[ing] the categorical approach, which looks only to the

---

[2] The firearm involved must be "capable of accepting a large capacity magazine," or fall under the definition of "firearm" provided by 26 U.S.C. § 5845(a). U.S.S.G. § 2K2.1(a)(1). The parties do not dispute the PSR's finding, adopted by the district court, that, here, "the firearm[s] are semi-automatic weapons and at least two of the magazines are large capacity."

[3] The enumerated offenses are "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." U.S.S.G. § 4B1.2(a)(2).

statutory definitions—i.e., the elements—of a defendant's prior offenses, and not to the particular facts underlying those convictions." *Id.* (citation modified). If the elements of an offense encompass conduct beyond the force clause or the enumerated-offense clause, then the offense is not a crime of violence. *See Mathis v. United States*, 579 U.S. 500, 509 (2016). This inquiry focuses on the "least culpable . . . of the acts criminalized." *Borden*, 593 U.S. at 424.

When a statute contains divisible, alternative elements, and one or more elements do not correspond to the elements of the qualifying offense, the court may use the modified categorical approach and consider certain documents to determine which alternative element formed the basis of the prior conviction. *See Descamps v. United States*, 570 U.S. 254, 261–62 (2013). Those documents include "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). Neither the categorical approach nor the modified categorical approach permits a district court to rely solely on a PSR's "mere characterization that the offenses were crimes of violence." *United States v. Ochoa-Cruz*, 442 F.3d 865, 867 (5th Cir. 2006) (per curiam). This prohibition "naturally follows the reasoning" of these approaches, "which call[] upon courts to look at the statutes at issue rather than the specific acts of the defendant." *Id.*

Here, after announcing the base offense level and Guidelines range, the district court explained that "[t]he reason for these guideline determinations [is] set forth in the presentence report." Our review of the sentencing transcript and the written statement of reasons does not reveal any basis, independent of the PSR, for the court's classification of Abercrombie's prior convictions. Thus, the district court erred in relying

exclusively on the PSR's description of Abercrombie's prior convictions to determine that such convictions were crimes of violence under § 2K2.1(a)(1). *See id.* at 866–67 (holding that the district court erred when it "accepted the PSR's recommendation and did not make an independent determination of whether [the defendant] had previously committed crimes of violence").

We have often held that in crime of violence determinations, "[r]elying on the PSR alone [is] clearly and obviously erroneous." *Id.*; *see also United States v. Martinez-Vega*, 471 F.3d 559, 562 (5th Cir. 2006) ("[T]he district court's sole reliance on the PSR to determine that the prior conviction was a crime of violence constituted clear and obvious error under Supreme Court and Fifth Circuit precedent."). Consequently, Abercrombie has satisfied the first and second prongs of plain error review with regard to the district court's procedural misstep in relying on the PSR alone to determine that his prior Louisiana convictions for domestic abuse battery constituted crimes of violence under U.S.S.G. § 4B1.2(a).

B

Abercrombie also contends that the district court substantively erred in finding that he sustained two convictions for crimes of violence as required to enhance his sentence under § 2K2.1(a)(1).

1

As an initial matter, the parties dispute whether Abercrombie has one or two prior convictions for Louisiana domestic abuse battery by strangulation. Specifically, the Government contends that Abercrombie's 2013 conviction for "Domestic Abuse Battery" is in fact a conviction for domestic abuse battery by strangulation.

The Government calls our attention to the fact that Louisiana domestic abuse battery is a misdemeanor until the defendant's third offense,

while domestic abuse battery by strangulation is a felony in the first instance. *See* La. Stat. Ann. § 14:35.3(C), (D)).[4] Because the PSR indicates that Abercrombie was sentenced to two years of imprisonment for the 2013 offense, and that offense was not his third domestic abuse battery conviction, the Government argues that the 2013 conviction was for domestic abuse battery by strangulation. Abercrombie offers alternative explanations for the length of his sentence and asserts that the court may not consider the PSR's description of his 2013 conviction in its crime of violence determination.[5] Abercrombie further argues that the Government cannot now contest the PSR's characterization of the conviction for the first time on appeal.

As explained above, we may not rely solely on the PSR's description of the 2013 offense to classify the offense as a crime of violence. *See United States v. Garza-Lopez*, 410 F.3d 268, 274 (5th Cir. 2005). Days before oral argument, however, the Government filed a motion seeking to supplement the record on appeal, pursuant to Federal Rule of Appellate Procedure 10(e), with the certified minutes reports from the state court proceedings of Abercrombie's domestic abuse convictions.

Federal Rule of Appellate Procedure 10(e)(2)(C) permits our court to correct or modify the record "[i]f anything material to either party is omitted from or misstated in the record by error or accident." Fed. R. App. P. 10(e)(2). Although the Government is correct that we have exercised our

---

[4] This is also true of the version of § 14:53.3 in effect at the time of Abercrombie's 2013 conviction. *See* La. Stat. Ann. § 14:35.3(A), (C)–(E) (versions in effect from August 1, 2012, to June 13, 2013).

[5] Abercrombie asserts that the two-year sentence could be the result of an illegal sentence that he did not challenge because he had received a longer concurrent sentence on another charge in the same proceeding. He also posits that the sentencing court could have mistakenly treated him as "a third-time domestic abuse offender given his extensive criminal history and arrest record."

discretion under Rule 10(e)(2) to permit parties to supplement the record in cases where, as here, the parties dispute which variation of a base offense a defendant has been convicted of, none of the cases cited by the Government, involve a motion to supplement filed after briefing was completed, let alone where briefing was completed for over five months. Perhaps because of this distinction, the Government insists that it would have sought to enter these reports into the record at sentencing had Abercrombie objected to the PSR's characterization of his prior domestic abuse offenses. But the Government offers no explanation for why it failed to move to supplement the record when Abercrombie raised the issue in his opening brief—much less an explanation demonstrating that its failure to do so was "by error or accident." *Id.* Accordingly, the Government's motion to supplement is DENIED.

Without relying on the PSR's narrative, or the minutes reports offered by the Government in its motion to supplement, we cannot conclude that Abercrombie's 2013 conviction for domestic abuse battery was actually a conviction for domestic abuse battery by strangulation. Accordingly, we proceed with our analysis considering whether the district court properly enhanced Abercrombie's sentence under U.S.S.G. § 2K2.1(a)(1) when he had two prior convictions for domestic abuse battery and one prior conviction for domestic abuse battery by strangulation.

2

Because enhancement of a sentence under § 2K2.1(a)(1) requires that a defendant have two prior convictions for crimes of violence, we begin with the question of whether Louisiana domestic abuse battery is a crime of violence under § 4B1.2(a).

Abercrombie argues that his convictions for domestic abuse battery do not constitute crimes of violence under the force clause of § 4B1.2(a) because domestic abuse battery is a general intent crime under Louisiana law. He

No. 24-30483

contends that the district court erred under *Borden* and *Garner*, which establish that Louisiana general intent crimes criminalize conduct beyond the scope of the force clause, thus rendering them categorically not crimes of violence.

The Government counters that *Garner* does not govern this case because it did not involve domestic abuse battery. Additionally, the Government argues that Abercrombie has failed to cite any cases that demonstrate a realistic probability that Louisiana courts consider domestic abuse battery to be a general intent crime.

In *Borden v. United States*, the Supreme Court considered whether an offense committed with a reckless mens rea constituted a crime of violence under the elements clause of the Armed Career Criminal Act ("ACCA"), which is identical to the force clause of § 4B1.2(a). *See* 593 U.S. at 423. *Compare* 18 U.S.C. § 924(e)(2)(B)(i), *with* U.S.S.G. § 4B1.2(a)(1).[6] The Court reasoned that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Borden*, 593 U.S. at 429. "Reckless conduct," the Court explained, "is not aimed in that prescribed manner." *Id.* Thus, under the categorical approach, reckless conduct is not a violent felony. *Id.* at 441. Soon after *Borden* was issued, we held that the decision "governs what can (and can't) qualify as a crime of violence under the Sentencing Guidelines." *United States v. Bates*, 24 F.4th 1017, 1018–19 (5th Cir. 2022) (per curiam) (citing *United States v. Greer*, 20 F.4th 1071, 1075 (5th Cir. 2021)).

Consistent with our holding in *Bates*, we decided *United States v.*

---

[6] Because of this shared language, "we have previously applied our holdings under . . . the ACCA to analyze the definition of crimes of violence under § 4B1.2, and vice versa." *See United States v. Mohr*, 554 F.3d 604, 609 n.4 (5th Cir. 2009).

*Garner* using *Borden*'s framework to conduct the categorical approach. In *Garner*, the defendant pleaded guilty to possession of a firearm after a felony conviction, and the district court applied a § 2K2.1(a)(4) sentencing enhancement due to the defendant's prior conviction for aggravated assault with a firearm under Louisiana law, which the district court deemed a crime of violence. *Garner*, 28 F.4th at 680–81. On appeal, we vacated Garner's sentence. Relevant here, we rejected the Government's argument that aggravated assault with a firearm was a crime of violence because the offense's statute requires "intentional" conduct. *Id.* at 683. We explained that under the Louisiana Criminal Code, some "intentional" offenses are "general intent crimes," for which the necessary mens rea "exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire on his part." *Id.* (citation modified). Thus, we reasoned that general intent crimes encompass "reckless or even negligent states of mind." *Id.* Because aggravated assault with a firearm is a general intent crime under Louisiana law, *State v. Boner*, 2019-0658, p. 10–11 (La. App. 4 Cir. 6/24/20), 302 So. 3d 131, 138, we determined that it is categorically not a crime of violence under § 4B1.2(a)'s force clause, which requires a more culpable state of mind. *Garner*, 28 F.4th at 683–84 (citing *Greer*, 20 F.4th at 1075); *see Borden*, 593 U.S. at 429 (explaining that language identical to § 4B1.2(a)'s force clause requires a targeted use of force).

Like the offense at issue in *Garner*, Louisiana domestic abuse battery is a general intent crime. *See State v. Gatewood*, 2012-281, p. 6 (La. App. 5 Cir. 10/30/12), 103 So. 3d 627, 632. Accordingly, it is an offense that can be committed recklessly, or even negligently, placing it beyond the ambit of § 4B1.2(a)'s crime of violence definition. *See Garner*, 28 F.4th at 683–84.

Despite *Garner*'s reasoning that Louisiana aggravated assault is categorically not a crime of violence under the force clause due to its status

as general intent crime, the Government urges us to limit *Garner*'s application to the specific offense of Louisiana aggravated assault with a firearm, citing our decision in *United States v. Forbito*, No. 22-11026, 2023 WL 8274528 (5th Cir. Nov. 30, 2023) (per curiam). But upon closer review, *Forbito* does not warrant such a narrow reading of *Garner*.

The question presented in *Forbito* was whether the district court erred by classifying Louisiana domestic abuse aggravated assault as a crime of violence. 2023 WL 8274528, at *1. Forbito argued that the district court erred because the Louisiana domestic abuse aggravated assault statute is "'nearly identical' to Louisiana aggravated assault with a firearm, . . . the offense addressed in *Garner*." *Id.* at *3. We rejected this argument because *Garner* did not address Forbito's specific offense *and* because Forbito did not identify any caselaw showing that his offense, like Garner's, was a general intent crime. *See id.* Thus, *Forbito* is better read as a declination to apply *Garner* to Louisiana offenses where the defendant has not actually cited caselaw showing that the offense at issue is a general intent crime.

Though the Government also contends that Abercrombie has not cited any such caselaw, we disagree. In support of his assertion that Louisiana domestic abuse battery is a general intent crime, Abercrombie cites several cases, primarily relying on *State v. Gatewood*. In *Gatewood*, a defendant convicted of Louisiana domestic abuse battery appealed his conviction on grounds that the State failed to carry its burden to show that he had "intentionally" committed the offense as required by the statute. 103 So. 3d at 631; *see id.* (explaining that domestic abuse battery requires "intentional" force or violence (quoting La. Stat. Ann. § 14:35.3(A)). The appellate court explained that, under Louisiana law, "[c]riminal intent may be specific or general," and "[i]n the absence of qualifying provisions, the terms 'intent' and 'intentional' refer to 'general criminal intent.'" *Id.* at 631–32. Thus, the State had met its burden of proving that Gatewood

11

"intentionally" committed the offense because § 14:35.3 does not specify the level of intent required and:

> [a]lthough defendant contends he accidentally hit the victim, the evidence indicates defendant, in the ordinary course of human experience, must have known that his action of moving toward the driver and forcefully removing the keys from the ignition of a moving vehicle would result in him contacting the driver in a manner to which the driver had not consented.

*Id.* at 632.

The parties draw opposite conclusions from this language. Abercrombie, relying on the court's use of the phrase "must have known," argues that *Gatewood* not only shows that domestic abuse battery is a general intent crime, but also that such crimes are evaluated objectively.

The Government contends that *Gatewood* stands for a different proposition. Focusing on the court's reference to what the "defendant" "must have known," the Government argues that in the context of domestic abuse battery, the defendant himself, not a reasonable person, must be aware that unwanted force will be the likely consequence of his action. Thus, the Government argues, the domestic abuse battery intent requirement is more akin to the Model Penal Code's definition of "knowing" culpability, which requires that a person be "aware that it is practically certain that his conduct will cause" the proscribed result. MODEL PENAL CODE § 2.02(2)(b).

Abercrombie has the better argument. Gatewood was prosecuted under the Louisiana Criminal Code, rather than the Model Penal Code. *See Gatewood*, 103 So. 3d at 630. And under the Louisiana Criminal Code, "intent" or "intentional" without a modifier, as it appears in the Louisiana domestic abuse battery statute, refers to general intent. *See id.* at 631–32. To the extent that the Government argues that *Gatewood* does not explicitly hold that Louisiana domestic abuse battery is a general intent crime, Abercrombie

also cites *State v. Wilson*, 2022-0346, p. 5 (La. App. 4 Cir. 12/9/22), 353 So. 3d 389, 393.  There, a Louisiana court of appeals explained that the fact that the domestic abuse battery statute "does not specify if it is a general or specific intent crime" "suggests it is a general intent crime."  *Id.*  The Government's focus on what the court's reference to what the "defendant" "must have known" overlooks that between these words is the phrase "in the ordinary course of human experience."  *See Gatewood*, 103 So. 3d at 632.[7]  Accordingly, the Government's argument that Abercrombie has failed to cite caselaw showing a realistic probability that domestic abuse battery is a general intent crime that can be committed recklessly or negligently is without merit.[8]

Louisiana domestic abuse battery is a general intent crime that can be committed recklessly or negligently.  We therefore conclude that it is clear or

---

[7] We further note that *Gatewood*'s definition of general intent—that "the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act," 103 So. 3d at 632 n.1—has been explained by Louisiana courts to mean that "the criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal," *State v. Harrell*, 2018-63, p. 5 (La. App. 5 Cir. 10/17/18), 258 So. 3d 1007, 1012; *see also State v. Howard*, 638 So. 2d 216, 217 (La. 1994) (per curiam) (quoting *State v. Holmes*, 388 So. 2d 722, 727 (La. 1980)).  That Louisiana courts consider the "very doing" of unlawful acts sufficient to establish general intent evinces their disregard for the defendant's subjective intent.

[8] Even if *Forbito* could be read to limit *Garner*, as the Government contends, our decision in *United States v. Kelley* strongly counsels against that interpretation.  40 F.4th 276, 286 (5th Cir. 2022).  When considering whether the district court erred in applying a crime of violence enhancement based on Kelley's prior convictions for Texas assault on a public servant, we reasoned that in the aftermath of *Borden* and *Garner*, we "*must* interpret [the force clause] to exclude crimes that can be committed negligently or recklessly from the definition of crime of violence."  *Id.* (citation modified) (emphasis added).  The Texas statute provided that assault could be committed recklessly.  *See id.*  Accordingly, we concluded that "[i]t is plain, post-*Borden*, that applying § 2K2.1(a)(3) to the convictions at issue was in error."  *Id.* at 287.

obvious error to classify it as a crime of violence under § 4B1.2(a). *See Garner*, 28 F.4th at 683–84.[9]

## C

That the district court erred does not, alone, warrant reversal. *See Puckett*, 556 U.S. at 135. Abercrombie also "carries the heavy burden of demonstrating that the error affected his substantial rights." *United States v. Jackson*, 220 F. App'x 317, 329 (5th Cir. 2007) (unpublished). A sentencing "error affects substantial rights if there is a reasonable probability that, but for the error, the defendant would have received a lesser sentence." *United States v. Suarez*, 879 F.3d 626, 635 (5th Cir. 2018) (citation modified). We "may consult the whole record when considering the effect of any error on substantial rights." *United States v. Vonn*, 535 U.S. 55, 59 (2002).

Abercrombie argues that the district court's error caused him to be sentenced under an incorrect, higher Guidelines range, which demonstrates the reasonable probability of a different outcome.[10] He asserts that a different outcome is especially likely where, as here, the district court imposed a within-Guidelines sentence. *See United States v. Guillen-Cruz*, 853 F.3d 768, 775 (5th Cir. 2017).

---

[9] We need not consider the parties' arguments as to whether it is plain error to classify domestic abuse battery by strangulation as a crime of violence because the record before us indicates that Abercrombie has only one conviction for that offense, and § 2K2.1(a)(1) requires that a defendant have two prior convictions for a crime of violence.

[10] Absent the district court's error, Abercrombie asserts that his base offense level would have been 20, instead of 26, because the firearm he possessed was "capable of accepting a large capacity magazine" and he was a prohibited person at the time of the offense, U.S.S.G. § 2K2.1(a)(4)(B), but he did not commit the offense subsequent to sustaining at least two convictions for a crime of violence, § 2K2.1(a)(1). Applying the same adjustments as his original sentence, his total offense level would have been 19, instead of 25. Combined with a criminal history of VI, the Guidelines range would have been 63 to 78 months, significantly below his current sentence of 132 months.

Citing both the sentencing hearing transcript and the court's written statement of reasons, the Government responds that Abercrombie cannot establish that his substantial rights were affected because the district court imposed his sentence based on both the calculated Guidelines range and the § 3553(a) factors, including Abercrombie's criminal history and the violent nature of his domestic abuse offenses.  The Government also contends that the checked box on the written statement of reasons "left no doubt" that the court would have imposed the same sentence.

Abercrombie replies that under *United States v. Diggles*, 957 F.3d 551 (5th Cir. 2020) (en banc), there is a disparity between the sentencing hearing transcript and the written statement of reasons, such that the district court's oral pronouncement, not the written statement of reasons, controls.  He also asserts that even if the written statement controls, it does not provide any reasoning as to why the court would still impose the same sentence based on the facts of the case.  But as these arguments are raised for the first time in Abercrombie's reply brief, they are waived.  *See United States v. Gas Pipe, Inc.*, 997 F.3d 231, 242 (5th Cir. 2021).

"In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome."  *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016).  Yet, the Supreme Court has recognized that while the application of an erroneous Guidelines range is normally sufficient to establish that the defendant's substantial rights were affected, there are sometimes "unusual circumstances" where "despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist."  *Id.* at 200–01.  In *Molina-Martinez*, the Court explained:

> The record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range. Judges may find that some cases merit a detailed explanation of the reasons the selected sentence is appropriate. And that explanation could make it clear that the judge based the sentence he or she selected on factors independent of the Guidelines. The Government remains free to "poin[t] to parts of the record"—including relevant statements by the judge—"to counter any ostensible showing of prejudice the defendant may make." [*Vonn*, 53 U.S. at 68]. Where, however, the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights.

*Id.* at 200–01.

Applying *Molina-Martinez*'s directive, we have found that an incorrect Guidelines calculation affected the defendant's substantial rights both where the record is unclear and where the record is silent as to what the district court would have done absent the error. In *United States v. Cisneros*, for example, we held that the defendant's substantial rights were affected by a Guidelines error where the record was unclear because the district court's explanation "explicitly tied the sentence imposed to the Guidelines range" and "did not indicate that the sentence was based on [independent] factors." 130 F.4th 472, 480 (5th Cir. 2025) (per curiam); *see id.* ("A district court's use of an incorrect Guidelines range affects a defendant's substantial rights if, '[a]t the very least, the district court's explanation did not make clear that the district court based the sentence it selected on factors independent of the Guidelines.'" (alteration in original) (quoting *United States v. Wikkerink*, 841 F.3d 327, 338 (5th Cir. 2016))). On the other hand, in *United States v. Blanco*, we determined that the defendant's substantial rights were affected because

the record was silent as to what the district court would have done absent the incorrect Guidelines calculation. 27 F.4th 375, 381 (5th Cir. 2022) ("[A] defendant's substantial rights are affected if: (1) a district court uses the Guidelines as a starting point; (2) the Guidelines calculation is incorrect; and (3) the record is silent as to what the district court might have done had the Guidelines range been correct.").

Here, as in *Cisneros*, the district court "explicitly tied the sentence imposed to the Guidelines range." The district court stated: "I do find in this case that the guidelines range reasonably addresses the real conduct of the defendant, underlies his crime, achieves the goals of [§] 3553(a)[,] and provides an appropriate sentence." Further intertwining the Guidelines with the sentence selected, the district court later stated: "I'm going to give you more—I'm going to give a guideline range, but it's going to be closer to the top of the guideline range because of [Abercrombie's criminal history]." Had this been the extent of the record before us, this case would be indistinguishable from *Cisneros*. Critically, however, the district court here also indicated in its written statement of reasons that it would have imposed the same sentence in the event of a Guidelines error. *Cf. Cisneros*, 130 F.4th at 480 (finding the record unclear when the district court linked the selected sentence to the Guidelines *and* did not indicate that the sentence was based on independent factors). And given that the district court's explanation at sentencing included the § 3553(a) factors, with particular emphasis on Abercrombie's criminal history, we cannot say that the record is silent as to what the district court would have done absent its Guidelines calculation error. *Cf. Blanco*, 27 F.4th at 381 (holding that the record was silent as to what the district court would have done absent a Guidelines error when the court stated that the imposed sentence was based on the Guidelines and "the totality of the factors"). Having "consult[ed] the whole record," we conclude that Abercrombie has not shown that his substantial rights were

No. 24-30483

affected by the district court's error. *Vonn*, 535 U.S. at 59. Consequently, we need not consider whether to exercise our discretion to correct the district court's error.

## IV

For the foregoing reasons, we AFFIRM Abercrombie's sentence.